MARY MOORE, Respondent, v. MISSOURI PACIFIC RAIL-
WAY COMPANY, Appellant.

St. Louis Court of Appeals, January 17, 1888.

TRIAL—FACTS MUST BE PROVED.—Facts which are essential to a right
of recovery must be proved by testimony having at least a pre-
ponderating influence. A verdict evidently founded upon mere
conjecture of possibilities or probabilities, however reasonable, will
not be permitted to stand.

APPEAL from the St. Louis Circuit Court, HON.
GEORGE W. LUBKE, Judge.

*Reversed and remanded.*

HENRY G. HERBEL, for the appellant: The court
erred in admitting incompetent, irrelevant, and imma-
terial evidence offered by plaintiff. *Darley v. Cabanne*,
1 Mo. App. 129; *Parker v. Portland Co.*, 69 Me. 171;
*Railroad v. Huntley*, 38 Mich. 537. The court erred in
refusing to give the instructions asked by defendant.
*Blair v. Railroad*, 89 Mo. 392; *De Forest v. Jewett*, 88
N. Y. 264; *Railroad v. Schertle*, 97 Pa. St. 455; *Rail-
road v. Shay*, 82 Pa St. 198; *Schmidt v. Herfurth*, 5
Rob. (N. Y.) 137; *Brawdy v. Brawdy*, 7 Barr. 157;
*Rogers v. Ins. Co.*, 6 Paige, 596; *Blair v. Railroad*, 89
Mo. 392; *Wilson v. Benedict*, 90 Mo. 213.

A. R. TAYLOR, for the respondent: There was evi-
dence tending to prove that the deceased lost his life by
reason of stepping into the hole, and being thereby
thrown down. *Kelly v. Railroad*, 70 Mo. 607; *Buesch-
ing v. Gas Light Co.*, 73 Mo. 230; *Keim v. Railroad*,
90 Mo. 321. The law presumes that the deceased was
exercising ordinary care at the time of his death.
*Buesching v. Gas Light Co.*, 73 Mo. 229; *Flynn v.
Railroad*, 78 Mo. 212. The facts make a case under the

law. *Lewis v. Railroad*, 59 Mo. 495 ; *Hall v. Railroad*, 74 Mo. 299 ; *Waldhier v. Railroad*, 87 Mo. 37. To avoid an act or contract on the ground of undue influence, regard will be had to the parties, and as in this case, if one of the parties is mentally weak and easily imposed upon, any evidence of imposition or unconscionable advantage taken will be sufficient to avoid the act. Story Eq. Jur., secs. 251, 239 ; *Turley v. Edwards*, 18 Mo. App. 686. The answer was a general denial, a plea of contributory negligence by the deceased, and a plea of release and discharge by the plaintiff to defendant after suit brought for the consideration of five hundred dollars, the alleged release being in writing, and filed with the answer. The reply was a general denial, except as to the signing of the release and the receipt of the five hundred dollars. The release and alleged discharge was obtained from the plaintiff by defendant's agent by fraud and deceit, and by undue influence practiced upon the plaintiff by the defendant's agent, while she was in the office of said agent. At the time she was in infirm health and in an extremely nervous condition, and was, by said false and fraudulent representations of said agent, induced to sign said release, and it was not her act. As soon as she became conscious of her act she caused the said money to be tendered back to defendant and said release to be demanded back, which defendant refused, and she still offers to return said money *Butler v. Regents*, 32 Wis. 124; *Schultz v. Railroad*, 44 Wis. 645; *Railroad v. Doyle*, 18 Kas. 59. Nor is it necessary, under such circumstances, to return, or offer to return, the money received. The jury may deduct it in their verdict. *Railroad v. Doyle*, 18 Kan. 64. Plaintiff did offer to return the money.

LEWIS, P. J., delivered the opinion of the court.

The petition states in substance, that the plaintiff's deceased husband, George Moore, was in his lifetime in the defendant's employ as a switchman ; that, on December 24, 1886, while in the discharge of his duties as such,

he dismounted from the step of a moving tender to throw a switch, and, in so doing, stepped into a hole or excavation in the defendant's track and was thereby thrown down, so that the tender passed over and killed him ; that the mishap was caused by the negligence of defendant and its agents in making and maintaining the said excavation in its track, so that it was a pitfall for the deceased ; that the defendant and its agents in charge of the track knew, or, by the exercise of ordinary care, would have known, of the said defective condition of the track, in time to have repaired the same before the said killing, but negligently failed to do so ; that the tender was also in negligently defective condition, by reason of there being no headlight thereon, and that this defect contributed to cause the fatality mentioned.

The answer was a general denial, a plea of contributory negligence by the deceased, and a plea of release and discharge by the plaintiff after suit brought, for the consideration of five hundred dollars ; the alleged release being in writing, and filed with the answer.

The reply was, first, a general denial, except as to the signing of the release and the receipt of the five hundred dollars ; second, that the release and alleged discharge were obtained from the plaintiff by fraud and deceit of the defendant's agent, and by undue influence practiced upon the plaintiff by the defendant's agent, while she was in the office of said agent; that, at the time, she was in infirm health and in an extremely nervous condition, and was, by the said false and fraudulent representations of said agent, induced to sign said release, and that it was not her act; that, as soon as she became conscious of what she had done, she caused the said money to be tendered back to the defendant, and the said release to be demanded back ; which the defendant refused, and she still offers to return the said money.

The testimony submitted to the jury tended to show that, at about 6:15 p. m., when it had become somewhat dark, the locomotive and tender were backing northwardly, at a slow rate of speed, on a switch track within

the limits of Carondelet. The last that was seen of Moore alive, was when he was standing on the step of the tender, in a position from which he might step off at the proper moment and throw the switch which they were then approaching. He was next seen, dead, beneath the tender, which, as it appeared, had dragged him for some distance along the track. No witness had seen him alight, or fall, or leave the step of the tender in any way. There was an excavation, or drain, as it was called, about three and one-half inches in depth, extending across the track, between two of the ties. The indications of dragging began, according to one witness, from one and a half to two feet, and according to another, about eight feet, northwardly of this drain. There were two or three similar drains across the track, some forty feet or so to the south. There was testimony to the effect that these drains had all been there ever since the construction of the railroad. Witnesses disagreed somewhat as to the suitableness of the drains to effect the object intended, but it was not questioned that the purpose of their construction was the protection of the roadbed. At the close of the testimony, the defendant asked for an instruction in the nature of a demurrer to the evidence, which was refused. The verdict was for the plaintiff.

The whole theory of the plaintiff's right of recovery, if any she has, rests upon two alleged facts: First, that the existence or presence of the drain, as situated and constructed, was imputable to negligence on the part of defendant; second, that the deceased, while alighting from the tender with due and ordinary care, stepped unintentionally into the drain and was thereby thrown off his balance, so that he fell and was run over by the tender. Both these facts are essential. If either be wanting, or not sufficiently proved, there can be no recovery by the plaintiff.

If, as clearly appeared from the evidence, the drain was considered by the defendant's servants and agents to

be a necessary adjunct for carrying off the surplus water, and so protecting the embankment at that point, no negligence could be charged upon the mere fact that it was there. It would be necessary to an imputation of negligence, that, through want of proper care and attention, the drain was improperly constructed, or was permitted to be and remain out of repair in some particular that might tend to make it more dangerous to persons coming in contact with it, than it would be if properly cared for. The only attempt made to show any defect of either construction or existing condition of the drain, appeared in statements made by some of the witnesses to the effect that, at one or both the ends of the drain, there was raised earth, which would probably prevent the flow of water away from the road. But, by no possible stretch of imagination, could such defects, if they really existed, be connected in the remotest degree with any supposable cause of the accident in question. It is idle to pretend that such defects, however negligently permitted, could throw any responsibility on the defendant, because of the switchman's unguardedly stepping into the drain.

The other supposed fact is, if possible, yet further removed from any substantial support in the evidence. We search this record in vain for the least filament of testimony tending to show that the deceased, in attempting to alight from the tender, put his foot into the drain. All is guesswork. It is conjectured that he chose to step off at that particular point. It may as well be conjectured that he was there seized with a fit and fell off, or that he fell off from any one of a dozen other causes. It is further conjectured that his foot went into the drain. There is quite as much evidence that he stepped on the end of the tie, or on the solid ground outside of the drain. All these matters of mere conjecture are equally consistent with the known facts. No one of them is confirmed by any direct testimony, and we have no right to adopt one in exclusion of the others, because of its tendency to subject the defendant to a

claim for damages. If it were allowable to speak of a preponderance, where there is absolutely no evidence on either side of the question at issue, it might be not unreasonable to argue, from the known facts, that the strongest probabilities are against the plaintiff's hypothesis. The signs of a dragging of the body did not begin at the drain, but at a point some feet in advance of it. The engineer testified that the switch about to be thrown by Moore was at least seventy-five feet from the drain, and that it was neither necessary nor usual for the switchman to get off the tender or engine, until within twenty-five or thirty feet from the switch. These facts may not rise to the dignity of even persuasive testimony. But they do point, for whatever they may be worth, rather to an accidental falling off from some unknown cause, than to an intentional stepping off and an accidental contact with the drain. This case strongly resembles *Railroad v. Shertle* (97 Pa. St. 450). There, a brakeman, while engaged about his duties in that capacity, fell under the wheels of a tender, which ran over him, causing his death. It appeared that the roadway was undergoing repairs, and was in a rough and uneven condition, without ballasting between the ties, and that the step for mounting on the tender "was not in the position it should have been to insure the greatest amount of safety." The plaintiff's theory was, that the deceased, in mounting the tender, missed his footing by reason of these defective conditions, and so lost his life. A jury found for the plaintiff. The Supreme Court reversed the judgment, and said: "There was not, however, as before stated, a particle of proof that either the track or the step had anything to do with his death. For aught that appeared, he may have fallen in a fit, or for some cause wholly disconnected with either. The case was submitted to the jury without evidence, and the verdict has no better foundation than a guess, or at most mere possibilities. This will not do. The practical effect of the judgment below is to take the property of the defendants and give it to the

plaintiffs. This is not allowable, even in the case of a corporation." Language could hardly be chosen better to fit the case before us. Every plaintiff must prove by competent testimony the facts upon which he is to recover. The plaintiff here has submitted no proof of the essential facts, but has proved only their possibilities. The jury have selected, among conjectural possibilities, the one best suited to their inclinations, and rendered their verdict accordingly. This is not in harmony with the judicial method of arriving at just conclusions.

As to the rulings of the court on the evidence and on the instructions, we should find no fault with either, could it be admitted that there was any testimony substantially tending to prove the facts most essential to the plaintiff's recovery. This remark applies as well to the litigation over the alleged release as to the other branch of the controversy.

With the concurrence of all the judges, the judgment is reversed and the cause remanded.