ROBERT H. MILLER, Respondent, v. THE WABASH
RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, January 18, 1892.

**Railroads: KILLING STOCK: EVIDENCE REVIEWED: PUBLIC CROSSING.**
The evidence in this case is reviewed, and it is *held, first,* that two
of respondent's animals came upon the track at a public crossing
and there was nothing to go to the jury; *second,* that, as to the
third animal, there was sufficient evidence to submit to the jury
the question of where it came upon the track.

*Appeal from the Daviess Circuit Court.*—HON. CHAS.
H. S. GOODMAN, Judge.

REVERSED AND REMANDED (*nisi*).

*Geo. S. Grover*, for appellant.

(1) As all the testimony clearly tended to show
that the animals came upon the railroad track in the
public highway, and were there struck by the train, the
court below should have directed the jury to find for
the defendant. *Sullivan v. Railroad*, 72 Mo. 195;
*Ehret v. Railroad*, 20 Mo. App. 251; *Music v. Railroad*,
57 Mo. 134; *Moore v. Railroad*, 28 Mo. App. 622;
*Henderson, v. Railroad*, 36 Mo. App. 109. (2) The plain-
tiff was permitted to usurp the province of the jury, by
giving his opinion and not the facts. This was a preju-
dicial error. *Muff v. Railroad*, 22 Mo. App. 584. (3)
The court gave improper instructions at plaintiff's
request. Authorities cited, *supra.*

*W. D. Hamilton* and *J. C. Leopard*, for respondent.

The court did not err in refusing to sustain defend-
ant's demurrer. The jury are the sole judges of the

weight of evidence, and where there is evidence from which the jury might reasonably infer facts in support of the plaintiff's claim the court should not take the case from the jury. *Grant v. Railroad*, 25 Mo. App. 227 ; *Emerson v. Railroad*, 35 Mo. App. 227 ; *Samuel v. Potter*, 28 Mo. App. 365; *Damhorst v. Railroad*, 32 Mo. App. 350; *Taylor v. Short*, 38 Mo. App. 21 ; *Mathews v. Railroad*, 26 Mo. App. 75; *Baum v. Fryrear*, 85 Mo. 151 ; *Groll v. Tower*, 544. And the appellate court will not interfere with a verdict on the grounds that it is against the weight of evidence. *Waiton v. Railroad*, 40 Mo. App. 249. ( 2 ) The instructions all taken together, properly declared the law under the evidence in the case. ( 3 ) The general law requiring railroads to maintain lawful fences and sufficient cattle-guards, section 2611, Revised Statutes, is not changed by the adoption of the law restraining stock from running at large under article 2, chapter 5, of said statute. *Morrow v. Railroad*, 17 Mo. App. 103 ; *Bumpman v. Railroad*, 14 Neb. 70; *Kerbs v. Railroad*, 64 Iowa, 670 ; 21 N. W. Rep. 131 ; *Railroad v. Sims*, 24 N. W. Rep. ( Neb.) 388 ; *Corwin v. Railroad*, 13 N. Y. 42.

Smith, P. J.—This was an action brought under section 2611, Revised Statutes, 1889, to recover $500, double damages for injuring certain animals for the plaintiff. At the trial the plaintiff had judgment, and the defendant appealed.

I. The first and principal question presented by the record for our decision is whether there was any evidence adduced which justified the submission of the case to the jury. The determination of this question necessarily requires an examination of all the evidence adduced in the case, from which it may be gleaned that at a point about two miles east of Pattonsburgh, Daviess county, where the defendant's railway runs in a north-westerly direction, it is intersected at an acute angle by a public road running nearly east and west. For some

distance on either side of the point of intersection the railroad runs through inclosed and cultivated fields and is inclosed on both sides by fences. At the point where the public road crosses the railway track, there are cattle-guards across the right of way connecting the railway fences. An open culvert on the north side of the public road runs diagonally across the railway track, over which there is a bridge, which is made to serve the purpose of an ordinary cattle-guard across the railroad track. This bridge is constructed by sawed timbers of the diameter of about four by five inches; on the top of the bridge the railway ties, on which the rail was laid, were about six to eight inches apart. The bridge is about thirteen feet across. The railway fence extended to, and was joined with, the bridge on each side by a post. The connecting post on the east side of the bridge had rotted off, and the fence there was in bad condition.

It further appears that the plaintiff, on the night before his animals were injured, had turned them loose on the public road about a mile and a half east of Pattonsburgh. The foot prints of the animals were found in the public road on the east side of the railway track at the point where the latter is crossed by the cattle-guard and also on the railroad track close up to the east end of the bridge. There were two or three foot prints of a horse and a mule on the bridge timbers. The imprint of the track upon the bridge is described by the witness as looking ''like the mare had made a jump or lunge.'' The impression of the foot on the tie looked like the ''animal was going at some speed.'' One track indented into the tie was about one-third and the other two-thirds across the bridge. The animals went upon the railway track and bridge from the public road where they had been turned loose by plaintiff. The foot prints indicated that the plaintiff's animals, two mares and a mule, had been grazing along the public road. There were foot prints about

the post that had rotted off and around or by which an animal might pass in and upon defendant's inclosed right of way. No foot prints were discovered on the railway right of way west of the bridge. The positive evidence of the engineer in charge of the locomotive was that two of the plaintiff's animals were struck on the public highway. That when the whistle was blown, they in their fright got in front of the engine and were struck right on the public crossing right by the bridge. They were running and trying to cross the track ahead of the engine. He only saw two horses at the time of the collision.

After the collision the mule's head was found four and a half feet west of the trestle on the defendant's right of way, and there maining parts were "scraped one hundred and fifty to two hundred feet" further on. The carcass of one of the mares was lying on the other side of the track, thirty feet west of the bridge. The other mare was found in a crippled condition about ninety feet west of the bridge. It was the opinion of some of the witnesses that a horse could cross on the bridge.

Does this evidence tend to show a legal liability of the defendant? Under the provisions of section 2611, Revised Statutes, it had been repeatedly held that it is the place where the animal got on the track, and not where it was killed that fixes the liability. *Ehret v. Railroad*, 20 Mo. App. 251; *Moore v. Railroad*, 81 Mo. 502; *Nance v. Railroad*, 79 Mo. 197; *Cecil v. Railroad*, 47 Mo. 246. So too it has been as often held that, it is not the duty of a railroad company to fence at public crossings. *Sullivan v. Railroad*, 72 Mo. 197; *McPheeters v. Railroad*, 45 Mo. 24; *Meyer v. Railroad*, 35 Mo. 352; *Ehret v. Railroad, supra*. Thus it is seen that all the testimony shows that at least two of the plaintiff's animals came upon the railway track in a public highway and were there struck by the train. There was not the slightest evidence that they crossed

the bridge before they were struck. They were undoubtedly struck while in the act of attempting to cross it from the public highway. There is not a *scintilla* of evidence, as to the two animals killed out right, that they were inside of the defendant's right of way before they were struck. There was no proof of any facts from which such an inference could be deduced.

Upon all the facts which the evidence in the least tends to show, the plaintiff was not entitled to a verdict as to the mare and mule which were killed. *Henderson v. Railroad*, 36 Mo. App. 109 ; *Moore v. Railroad*, 28 Mo. App. 622; *Ehret v. Railroad*, 20 Mo. App. 251.

As to the other mare which was not killed but crippled, there was evidence introduced from which the jury might well have inferred that she got upon the track at a point at which the fence was not a lawful one. The evidence that her foot prints were seen around and about where the post had rotted off and the fence was defective, and that she could have entered upon the defendant's right of way at that point, coupled with the further evidence that she was found in a crippled condition ninety feet west of the bridge on the defendant's right of way, we think fully justifies such an inference. If the mare was injured on the inside of the defendant's inclosed right of way, as we must infer was the fact, then we cannot resist the conclusion, without we ignore the evidence, that she either went through the fence where it was defective, or that she passed over the bridge because it was, as a cattle-guard, probably ordinarily insufficient to prevent horses from getting on the defendant's railroad. At all events, this evidence was sufficient to authorize a submission of the case to the jury as to the crippled mare.

There was no evidence upon which to base the plaintiff's instructions as to the animals that were killed. They were well enough as to the one crippled.

The uncontradicted evidence was that the crippled mare was damaged to the extent of $75.

It results from these considerations that the judg-ment of the circuit court will be reversed, unless the plaintiff will within ten days hence file with the.clerk of the court a *remittitur* of $250, this reducing the amount of his recovery to the sum of $150, in which case the judgment will stand affirmed.    All concur.