SULLIVAN v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

DIVISION ONE.

1. **Master and Servant**: VICE-PRINCIPAL: RAILROAD. A foreman in charge of laborers engaged in the removal of a railroad company's building is the vice-principal of the company, and not a fellow-servant of the laborers.

2. —————— : —————— : DEFECTIVE INSTRUMENTALITY. Where such fore-man directs a laborer to use a defective staging, and injury results therefrom, the company will be liable.

3. —————— : —————— : —————— . Though the employe so injured knew of the defect in the staging on which he was working, yet where he did not know the danger to which it subjected him, but the fore-man did know it or could have known it had he done his duty, defendant is liable for injuries received by reason of the fall of the staging.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

THE following instructions were given for plaintiff: "1. If you believe from the evidence that, at the time and place in evidence, the plaintiff was in the employ-ment of, and at work for, the defendant, under the orders, direction and control of a foreman who acted for the defendant in superintending the men employed and the work then being done in the removal of the roof of defendant's icehouse ; that while so engaged in that work a defect was discovered in the tie-beam sup-porting the scaffolding in evidence ; that plaintiff did not know of both the defect and the increased danger arising therefrom ; that defendant's said foreman did know of said defect and its dangerous character ; that with such knowledge said foreman assured the plaintiff and his fellow-workmen that the defect did not render the scaffolding dangerous or unsafe, or stated to, or in the hearing of, plaintiff that said scaffolding was all right, or words to that effect; and that the plaintiff, relying upon such statements of said foreman, and being directed by said foreman to do work which obliged him to go upon said scaffolding, stepped upon said scaffolding, which, on account of this defect, gave way and thereby precipitated the plaintiff to the ground; and that in consequence thereof he was injured, then

the plaintiff was not guilty of such contributory negligence as will preclude a recovery in this case, and you should find for the plaintiff, unless you further find that said defect and its dangerous character were so obvious that a man of ordinary care and prudence would not have stepped upon said scaffolding.

"2.   It was the duty of the defendant to use ordinary care to furnish for the use of the plaintiff and his fellow-workmen a scaffolding that was reasonably safe for the purposes for which it was intended and used; and if you find that defendant negligently failed to perform this duty, and furnished a scaffolding that was unsafe; that the defendant's foreman in charge of the men and the work knew of the unsafe condition of said scaffolding, and that, with such knowledge upon the part of its said foreman, the said foreman further negligently failed to either remedy the defect, or warn the plaintiff of the danger of going upon said scaffolding, and that the plaintiff, while in the observance of ordinary care and without negligence upon his part, and without knowledge of the unsafe condition of said scaffolding, went upon said scaffolding in the performance of the duty assigned him, and by reason of the defect therein was thrown to the ground and injured, then the plaintiff is entitled to recover.

"3.   If the defendant's foreman knew of the defect in the scaffolding in proof, and the danger likely to ensue therefrom, it was his duty, if reasonably within his power, to remedy such defect, or warn the plaintiff of the danger, and thereby prevent the injury consequent therefrom.

"4.   The fact, that the plaintiff had some knowledge or notice of a defect in the tie-beam supporting the scaffolding in evidence, may properly be considered by you in determining the question as to whether, by going upon the same while engaged in the work in which he was employed, the plaintiff was guilty of such negligence as contributed to his injury; yet this fact alone

will not preclude a recovery upon his part, unless the danger from such defect was at the time so obvious or glaring as to deter a man of ordinary prudence from going where plaintiff went, and doing what he then did in the performance of the duty assigned him.

"5. The words, ordinary care, as used in these instructions, is that degree of care which a person of ordinary prudence would observe under like circumstances; and negligence, as used in these instructions, is the omission or failure of such a person to observe such care.

"6. The court instructs the jury that if you should find for the plaintiff you should assess his damages at such sum as you may believe him entitled to under the evidence in this case, but in an amount not exceeding $10,000. And, in arriving at the amount of damages, you should take into consideration the nature and extent of the injuries received by plaintiff, together with the pain and suffering, if any, caused thereby."

To which instructions and each of them, the defendant objected; which objections and each of them were by the court overruled, and said instructions given to the jury. To which action and ruling of the court in overruling said several objections and giving said instructions, the defendant then excepted and now excepts.

The following instructions were given for defendant: "1. The jury are instructed that they cannot infer or presume negligence on the part of the defendant, from the happening of the accident to plaintiff. It devolves upon the plaintiff to establish by a preponderance of the evidence: *First.* That the defendant was guilty of negligence in not exercising ordinary care to provide plaintiff with a safe and sufficient staging on which to stand; *second,* that plaintiff's injuries resulted solely from such negligence on the part of the defendant; and, *third,* that plaintiff did not know, and could not, by the exercise of ordinary care and

prudence, have known of the unsafe and insufficient condition of said staging, if it was, in fact, unsafe and insufficient ; and, unless the plaintiff has established each and all of these facts by a fair preponderance of all the evidence, your verdict must be for the defendant.

"2. If the jury believe from the evidence that, at the time of the accident to the plaintiff, the staging referred to in the evidence was in such a condition that it could be used with safety by a person exercising ordinary care and prudence, they must find for the defendant.

"3. The court instructs the jury that the plaintiff, in assisting to remove said section of the roof which had been used as a part of the staging off from over said broken tie-beam, was bound to exercise that degree of care and caution which would have been observed by a person of ordinary prudence, under similar circumstances; and, if you find that the plaintiff might by the exercise of ordinary care have avoided injury, your verdict must be for the defendant.

"4. If the staging provided by defendant to enable plaintiff and his fellow workmen to take down and remove the roof of the icehouse mentioned in the petition was defective, insufficient and unsafe, and plaintiff knew it, and notwithstanding such knowledge, 'and knowing same had not been repaired,' ventured upon and used said staging in removing said roof, or a part thereof, then plaintiff cannot recover in this case, although the jury may believe from the evidence that said staging could easily have been repaired, and that defendant failed to have the same done."

The following instructions asked by defendant were refused : "5. The court instructs the jury that, under the pleadings and the evidence in this case, the verdict must be for the defendant.

"6. If the jury believe from the evidence that Sullivan knew that the tie-beam was broken or cracked

before he stepped on the same, then the verdict must be for the defendant.

"7. If the jury believe from the evidence that, at the time of the accident to plaintiff, the staging mentioned in evidence was in such a condition that it could not, with reasonable care, be used with safety, and such unsafe condition was known to the plaintiff, or, by the exercise of ordinary care, could have been known to him prior to the accident, they must find for the defendant.

."8. If the tie-beam mentioned in plaintiff's petition was weak and defective as therein stated, and plaintiff, while assisting in removing the section of the roof which was over the same, stepped upon the said tie-beam and the same gave way, and plaintiff by reason thereof fell and received the injuries complained of thereby, then he is not entitled to recover, and your verdict will be for the defendant.

"9. If you find from the evidence that the defendant had an abundance of lumber and material, out of which a safe and secure staging might have been constructed, which they were at liberty to use for that purpose; and that the plaintiff and his fellow-workmen, including the foreman Prather, instead of making use of such materials, chose to make use of the tie-beam in said building to aid them in erecting the staging; and that, in consequence of the fact that said tie-beams were not sufficiently strong and suitable for that purpose, the plaintiff fell and was injured, your verdict must be for the defendant.

"10. The defendant, in selecting material for tie-beams in said building, was only bound to provide such as was suitable and sufficient to answer the purpose for which tie-beams are intended, and for which they were placed in said building. They were not bound to be strong enough to permit the same being used for a purpose for which they were never intended.

"11.   The plaintiff in his testimony admits that he knew that the tie-beam mentioned in evidence had cracked at about ten o'clock on the day he was injured, and that he knew that one of the sections of the roof had been let down and placed and kept over the said beam, to keep the men from stepping on it; and the court instructs you that the plaintiff, having this knowledge, was charged with notice of the existence of a defect in said tie-beam, and he would be required to examine and determine for himself the character and extent of this defect before trusting his weight upon it, and should be held to know each and every fact in regard to said defect, which such an examination would have made known to him; and if you believe from the evidence that plaintiff stepped upon said beam without having made an examination to ascertain the character of the defect in the same, and that such examination would have disclosed to the plaintiff the danger of stepping on said beam, your verdict must be for the defendant.

"12.   The plaintiff admits that he knew that the tie-beam mentioned in evidence had cracked at about ten o'clock on the day he was injured; that he knew that a section of the roof had been let down and placed and kept over the defect in said beam to prevent any injury occurring to anyone therefrom; and that with such knowledge he continued to work at the business in hand, and attempted to assist in removing the section of roof from over said defective beam; and the court instructs you that the plaintiff having this knowledge was charged with notice of the existence of a defect in said tie-beam, and would be required to ascertain and know for himself the character and extent of this defect before trusting his weight upon it; and if you believe from the evidence that the plaintiff with such knowledge stepped on said beam without making a sufficient examination to ascertain the strength of the

same, or the character and extent of the defect in the same, your verdict must be for the defendant.

"13. If the plaintiff knew that the tie-beam mentioned in evidence had cracked early in the day, and that, in order to remedy the defect in the same, a section of the roof had been let down over such defective beam so as to be used as a staging or scaffolding over the said defective tie-beam ; and with such knowledge the plaintiff continued at said work without protest or complaint, and was afterward, while removing such section of the roof off from over said defective tie-beam, injured, then he cannot recover, and your verdict must be for the defendant.

"14. There is no evidence tending to show that Prather, the foreman, was charged with the duty of providing suitable lumber and materials out of which to construct the staging mentioned in the evidence.

"15. If the defendant, to enable the plaintiff and his fellow workmen to remove the roof of the icehouse mentioned in plaintiff's petition, provided a staging consisting of planks placed across the tie-beams of said house, and if the plaintiff, while assisting in removing the section of said roof mentioned in said petition, stepped off of said staging and upon a defective tie-beam which gave way, because it was not sufficient to bear his weight, and plaintiff because of said tie-beam giving way fell and received the injuries complained of, he is not entitled to recover, and your verdict will be for defendant.

"16. The statement of the foreman Prather, to the effect that said tie-beam would be all right if the section of the roof was let down upon and used as a staging over the same, was not an expression of an opinion upon which plaintiff could rely while engaged in removing such section of the roof off from over such defective tie-beam."

*L. H. Waters* and *Spencer, Burns & Mosman* for appellant.

(1) Plaintiff's want of care after he was informed of the danger directly contributed to the injury complained of. Wood's Mas. & Ser., sec. 319, p. 638 ; Whar. on Neg., sec. 332 ; Whittaker's Smith on Neg. 388, 391 ; *Huhn v. Railroad,* 92 Mo. 440 ; *Buesching v. Gaslight Co.,* 73 Mo. 219. (2) The court erred in overruling defendant's demurrer to the evidence. See authorities, *supra.* (3) The court gave improper instructions on behalf of plaintiff. *First.* Instruction, numbered 1, should not have been given. Plaintiff knew of the defect in the tie-beam and that it was seriously weakened thereby. He knew that the section of the roof had been left over it for that reason, to make it safe, and that knowledge was ignored by the instruction. No such assurances were made as set out in that instruction, and no assurance was made concerning the safety of its removal. *Second.* His second and third instructions were not supported by the evidence. They ignore his knowledge of the condition of the scaffolding. *Third.* The fourth required that the danger should be so obvious or glaring as to deter a man of ordinary prudence from going where he went. Such knowledge was sufficient to defeat a recovery ; he might reasonably have supposed that he could safely work about it by the use of care and caution. *Huhn v. Railroad,* 92 Mo. 440 ; *Soeder v. Railroad,* 100 Mo. 673. (4) The court erred in modifying defendant's fourth instruction by adding the words, "and knowing the same had not been repaired." The instructions 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 should have been given. (5) The verdict was excessive. (6) Plaintiff's injury is shown by his own evidence to have been

occasioned by his own want of care. *Mentzer v. Armour*, 18 Fed. Rep. 376. (7) It was not defendant's duty to have the scaffolding "in a safe condition" at every moment of the work, and especially is this true when the men are through with the work and engaged in removing the scaffolding. *Armour v. Halin*, 111 U. S. 318. (8) . Where the master furnishes the materials necessary for the construction of a safe and suitable platform or scaffolding, and left the duty of constructing it to servants, he is not responsible for their negligence in constructing the scaffolding out of such materials. The scaffolding "was not a completed structure furnished by the defendant. for its employes to work upon, but was itself a part of the work they were employed to perform." *Lindval v. Woods*, 42 N. W. Rep. 1020 ; *Benn v. Null*, 65 Iowa, 407 ; *Connor v. Pulp Co.*, 29 Fed. Rep. 630 ; *Cotton v. Richards*, 123 Mass. 497 ; *Kelley v. Norcross*, 121 Mass. 510 ; *Pichel v. Railroad*, 62 Wis. 338 ; *Bowen v. Railroad*, 95 Mo. 277.

*C. O. Tichenor* and *Crittenden, Stiles & Gilkerson* for respondent.

(1) Mere knowledge of the defect, especially knowledge of so indefinite a character as the plaintiff had in this case, is not sufficient to debar a recovery, but the dangers arising from the defect must also be known to him. Wood's Master & Servant, sec. 376 ; *Waldhier v. Railroad*, 87 Mo. 37 ; *Huhn v. Railroad*, 92 Mo. 440 ; *Stoddard v. Railroad*, 65 Mo. 514 ; *Conroy v. Iron Works*, 62 Mo. 39 ; *Keagan v. Kavanaugh*, 62 Mo. 230. (2) It was the duty of defendant's foreman to keep the instrumentalities furnished for plaintiff's use in proper repair. *Fuller v. Jewett*, 80 N. Y. 53 ; *Flynn v. Railroad*, 78 Mo. 203 ; *Ford v. Railroad*, 110 Mass. 240 ; *Wedgewood v. Railroad*, 41 Wis. 478. (3) The plaintiff was not a fellow-servant with the foreman in such a sense as to deprive him of the right of recovery

in this action, and that the foreman was the *alter ego* of the company is fully established by the doctrine enunciated by this court in the following cases : *Moore v. Railroad*, 85 Mo. 588 ; *McDermott v. Railroad*, 87 Mo. 285 ; *Sullivan v. Railroad*, 97 Mo. 113 ; *Dayharsh v. Railroad*, 103 Mo. 570.

SHERWOOD, P. J.—Action for damages for injuries resulting to plaintiff in consequence of the falling of a portion of a scaffold or staging, upon which plaintiff and other carpenters under Prather, their foreman and the agent of the defendant, were engaged in removing an icehouse of the latter, which was to be erected at another place.

The work was begun by sawing the roof into sections of seven or eight feet in width and letting them down upon a staging then being erected by some of the carpenters while plaintiff and Lauffer were upon the roof engaged in sawing the roof into sections. This staging was formed by placing posts under the center of each of the tie-beams, which theretofore had been employed to keep the building from spreading, so that the tie-beams would sustain the sections of the roof when let down upon them, and two rows of plank, two by twelve, were placed on and spiked to the tie-beams down through the center to work from. Planks which had been used as collar-beams were thrown by the workmen across the tie-beams as they were taken down.

About ten A. M., as they let down the first section at the northeast corner, which was about seven by sixteen feet, a cracking was heard below it, and plaintiff says he felt the staging sinking, and the foreman went below and reported to the men including plaintiff, that there was a knot in the beam, and that it was all right if they would put the section of the roof over it as a staging, which was done. The broken tie-beam was under about the center of the section. They took down the entire roof by sections and then proceeded to take them

off by pushing them over the sides of the building. In the afternoon, between two and four P. M., and after all the sections but the one in question had been taken down, they reached the section which covered the broken tie-beam and attempted to remove it as the others. Plaintiff and several others were on top and raised the inner end of that section, and were pushing it to get it over the plate onto skids placed on the outside against the building. While so doing, and after the section had been moved two or three feet, plaintiff says something gave way under him, and he went down and was injured.

Prather was present at the time of the removal of this last section and gave orders for its removal, as he himself testifies, and there is other testimony to the same effect, and there can be no question from the testimony but that the fall of the plaintiff was owing to the broken tie-beam, and that plaintiff was not aware that a portion of the defective tie-beam had fallen out, leaving the other portion wholly unsupported, and of this the foreman Prather was aware. Prather stood in the attitude, not of a fellow-servant of plaintiff, but as the vice-principal, the *alter ego*, of the defendant company. *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 285.

That company was bound to use due care in the erection of reasonably safe staging on which plaintiff could work, especially as he was not engaged in the construction of that staging; and, failing to do this, the company which was represented by Prather became responsible for the injury resulting to plaintiff therefrom. This is not a case like the *Armour case*, 111 U. S. 315, where the question turns upon the liability of the master to one fellow-servant resulting from injuries inflicted through the negligence of a co-employe, but the original negligence of the master manifested in a variety of ways by the defendant company through its appointed representative. It was the clear duty of that

representative to have repaired the broken tie-beam or never to have used it in the first instance without making the necessary repair thereto.

And having given the plaintiff the original assurance that the staging was safe, the fact that Prather was present and ordered and superintended the removal of the last section of the roof when the accident occurred was tantamount to a tacit assertion that it was safe for plaintiff to proceed with the removal of that section, and plaintiff was not bound to search for danger, but had a right to rely upon the judgment and discretion of the defendant's foreman that he would fully perform the measure of his duty towards him.

The plaintiff, indeed, knew to a certain extent of the defect in the tie-beam, but he did not know of the danger to which he was subjected by reason of the defect, which Prather did or would have known, had he discharged his duty in this regard. These principles are recognized in the somewhat recent case of *Bowen v. Railroad*, 95 Mo. 277, although they were not directly involved. See the cases there cited, especially *Arkerson v. Dennison*, 117 Mass. 407; also, Wood, Mas. & Ser. [ 2 Ed.] secs. 354, 376.

The instructions given and refused will accompany this opinion and, as we are not able to see that any material error in regard to their being given or refused has occurred, we affirm the judgment. All concur.