.J. H. JEWETT, Defendant in Error, v. THE KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, June 13, 1892.

1. **Railroad:** KILLING STOCK: [CARE: TRESPASSING HORSES: BURDEN OF PROOF. When animals get upon the track away from any public crossing, and at a point where defendant's servants were not required to anticipate the presence of stock, they are mere trespassers, and defendant was only bound to use ordinary care to protect them after discovering their perilous condition, and the burden of proving want of such care rests upon the plaintiff.

2. ———: PRESUMPTION AS TO TRAINMEN'S DUTY: FAILURE OF EVIDENCE. The presumption obtains that trainmen in charge of a train did their duty, and an examination of the evidence in this case fails to show anything tending to prove negligence.

*Appeal from the Cass Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

REVERSED.

*Wallace Pratt* and *I. P. Dana*, for plaintiff in error.

(1) There was no evidence of defendant's negligence, and, therefore, the case should not have been submitted to the jury, and when their verdict was rendered it should have been set aside. *Current v. Railroad*, 86 Mo. 62; *Schlereth v. Railroad*, 96 Mo. 509; *Bowen v. Railroad*, 95 Mo. 268; *Brown v. Railroad*, 20 Mo. App. 222; *Jewett v. Railroad*, 38 Mo. App. 48; *Flannery v. Railroad*, 23 Mo. App. 120; *Gourley v. Railroad*, 35 Mo. App. 92; *Cathcart v. Railroad*, 19 Mo. App. 117; *Shaw v. Railroad*, not reported; *Powell v. Railroad*, 76 Mo. 85; *Musser v. Maynard*, 59 Iowa, 11; *Ryan v. Taylor*, 31 Kan. 366; *Powell v. Pugh*, 25 Kan. 95; *Judd v. Railroad*, 23 Mo. App. 56.

*W. D. Summers*, for defendant in error.

The court did not err in refusing defendant's instructions in nature of demurrer to evidence. *Gourley v. Railroad*, 25 Mo. App. 144; *Clay v. Railroad*, 24 Mo. App. 39; *Barry v. Railroad*, 98 Mo. 62; *Roland v. Railroad*, 32 Mo. App. 8; *Corrister v. Railroad*, 25 Mo. App. 619; *Huhn v. Railroad*, 92 Mo. 440; *Tabler v. Railroad*, 93 Mo. 79; *Riding v. Railroad*, 97 Mo. 62; *Kinney v. City of Springfield*, 35 Mo. App. 97; *Ball v. City of Independence*, 41 Mo. App. 469; *O'Hare v. Railroad*, 95 Mo. 662; 1 Thompson on Trials, sec. 1037.

GILL, J.—This is an action to recover the value of a mare and mule colt killed by one of defendant's freight trains. The right to recover is based on alleged negligence in the operation of the train. The track ran through plaintiff's farm; was fenced on both sides, with gates at a farm crossing near plaintiff's house. Plaintiff's son started to drive several head of stock across the track at this crossing to water them; it was after eight o'clock at night of July 22, 1887, and between sundown and dark, and at the hour when a regular freight train passed daily. The boy opened the gate on one side of the track, drove the animals upon the right of way, closed the gate behind them and went across and opened the gate on the other side to let them out. A mare and mule left the rest and ran alongside the track and through the high weeds on the right of way, away from the gate to the northwest, towards a railroad bridge; and before the boy got them back the train, consisting of twelve loaded freight cars, came along from the southeast, running down grade at a speed of about fifteen miles per hour. The engine headlight was lighted, as were the lamps at the hind end of the train and the lanterns of the men.

The two animals, as the train approached, came out of the weeds and went upon the track, and ran down it away from and in front of the engine. Upon first seeing the objects, the engineer, as the animals moved away from him in the dusk, testifies that he thought they were men, and merely whistled to let them know a train was coming. He then discovered, as he swears, that they were animals, and at once whistled the stock alarm and for brakes, set the steam brakes on his engine and reversed the engine and did everything he could to stop the train, realizing as he testified, that "if the stock got caught in the bridge, and we ran into it, it was likely to ditch the train and kill me and my

fireman." Defendant's witnesses also swear that the bell was rung by the fireman, and brakes were set on the train by the brakemen and conductor, and it was stopped with the engine pilot just across the bridge. The trainmen, as the fireman testified, made a quick stop of the train, but the animals had run into the bridge and were fast there, so that the engine ran upon and killed them, and their bodies were taken out from under the engine. Mr. Jewett, who was called from his home by the whistling, and his son ran down the track after the train, and reached the bridge while the train was standing there. On the trial in the circuit court plaintiff had a verdict and judgment for the value of the animals killed, and defendant has appealed.

This case is here on the second appeal. Its former disposition will be found reported in 38 Mo. App. 48.

As a basis of decision, now, we repeat from the former opinion that "these animals got upon the track of the defendant, away from any public (or even private) crossing, and at a point where defendant's servants were not required to anticipate the presence of stock. They were then mere trespassers, and the defendant was only bound to use ordinary care to protect the mare and mule after discovering the perilous position in which they were placed." *Jewett v. Railroad*, 38 Mo. App. 48.

If the evidence shows that the trainmen, when they discovered the dangerous position of plaintiff's mare and mule colt, used every reasonable means, consistent with their own safety and that of defendant's train, to avoid the collision and consequent damage, then defendant is not liable. The burden of proving such want of care rests on the plaintiff. Defendant's counsel argue with convincing force that the entire testimony wholly fails to establish such negligence on

the part of defendant's employes. And, after a careful consideration of all the evidence, we yield to this contention, and hold that there was nothing shown to justify a verdict for the plaintiff.

The presumption first obtains that the trainmen did their duty. Is there anything here tending to prove the contrary, and that they carelessly ran down and killed this stock after becoming aware of its presence on the track? We think not. The engineer and two brakemen in charge of the train testify clearly and unequivocally that when the situation was by them discovered they used every reasonable effort at their command to stop the train and avoid the accident. This was all that could be required under the law. See authorities cited in 38 Mo. App. 51, 52. It was in the dusk of the evening, the train was passing through farm lands, the track fenced on the two sides, and with high standing weeds tending to conceal the course of the track. The train was bounding forward on a down grade, when these animals suddenly appeared in its front. The engineer at first mistook them for men and gave the usual signal of warning; but just then, discovering the objects to be stock, the whistle was repeatedly sounded, the brakes applied and the engine reversed. The animals were, however, overtaken at the bridge a few hundred feet away and just as the train was brought to a stop. In short, the evidence for the defense clearly shows that the trainmen did all that could have been reasonably expected. As the engineer says, he considered the near approach to the bridge, with stock in their front, a condition of things jeopardizing the life of himself and fireman.

Now, as opposed to this evidence given by the trainmen, there is nothing worthy to be so considered. Two witnesses, neighbors to the plaintiff, were half to three-quarters of a mile away and heard the whistling

locomotive as it passed through Jewett's farm; but they neither saw nor heard anything that tended, in the remotest degree, to prove that the trainmen failed to stop the train as soon as they might after discovering the peril of the animals. Equally as worthless was the testimony of plaintiff and his son who came upon the track to the rear of the passing train. They did not know, nor had any means of knowing, whether the trainmen made proper exertion to stop the train. They only saw the engine and cars passing down the grade ahead of them through the gloom of the evening, and that the animals were just in advance; but whether or not the engineer and brakemen were exerting themselves to avoid the accident, they knew nothing.

In our opinion, then, the demurrer to the evidence ought to have been sustained. The judgment will be reversed. All concur.