ROBERT L. GLASSCOCK, Respondent, v. SWAF-FORD BROS. DRY GOODS COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1904.

1. **MASTER AND SERVANT: Safe Appliances: Ordinary Care.** A master is only required to use ordinary care in furnishing reasonably safe appliances for the servant and does not have to provide against all possibly anticipated happenings.

2. ————: **Safe Place: Presumption: Burden of Proof.** The presumption is that the master discharges his duty in supplying suitable appliances for the servant, and the servant must overcome this before he can recover and also the presumption that he assumed the hazards complained of and that the injury did not arise from obvious defects, but from a non-performance of some duty owing to the servant and in the absence of such proof the injury is attributable to some cause for which the master is not liable.

3. ————: **Defective Appliances: Scienter.** Before the master is liable for defects in the appliances he must know it or be able to know it by the exercise of ordinary care and negligence can not be assumed from the mere fact of the injury nor will such fact send the case to the jury.

4. ———: ———: ———: **Evidence.** The evidence relating to the falling of a safety door to an elevator in a storeroom is considered and it is held that there is no evidence that defendant had any knowledge of the shortening of the rope which caused the falling in time to have remedied the defect; but if the condition of the rope was of long duration the servant violating his duty in not informing the master is guilty of contributory negligence.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*Pratt, Dana & Black* for appellant.

(1) There is no evidence that plaintiff's injury was caused by any actionable negligence of defendant, and hence a verdict should have been ordered in its favor. As to the presumptions: Wood's Master and Servant, sec. 382; 2 Thompson on Negligence, sec. 48, p. 1053; Railroad v. Wagner, 33 Kan. 666; Jewett v. Railroad, 50 Mo. App. 551; Nolan v. Shickle, 3 Mo. App. 305; O'Donnell v. Baum, 38 Mo. App. 249; Smith v. Railroad, 113 Mo. 82. (2) As to facts necessary to be affirmatively proved: (a) The burden rested upon plaintiff of affirmatively proving negligence on the part of defendant. Gurley v. Railroad, 104 Mo. 223; Perse v. Railroad, 51 Mo. App. 171; Yarnell v. Railroad, 113 Mo. 570; Dowell v. Guthrie, 116 Mo. 646; Bowen v. Railroad, 95 Mo. 268; Murray v. Railroad, 101 Mo. 236; Brown v. Lumber Co., 65 Mo. App. 165; Norville v. Railroad, 60 Mo. App. 416; Fuchs v. City, 167 Mo. 635; Musick v. Packing Co., 58 Mo. App. 330; Krampe v. Assn., 59 Mo. App. 277. (b) And not only did the burden rest upon plaintiff of affirmatively proving some such negligence or failure of duty on the part of defendant, but plaintiff was limited to and the burden rested upon him of proving negligence as alleged in his petition. Ravenscraft v. Railroad, 27 Mo. App. 617;

Pryor v. Railway, 85 Mo. App. 378; Hite v. Railway, 130 Mo. 132; Jacquin v. Cable Co., 57 Mo. App. 320. (c) Furthermore, the burden rested upon plaintiff, after proving some failure, as above stated on the part of defendant in discharging its duty to plaintiff, to also prove that such failure was not only the cause but the proximate cause of his injury. Killian v. Railway, 86 Mo. App. 476; Brown v. Railway, 20 Mo. App. 227; Cooley on Torts, p. 69; 1 Jaggard on Torts, p. 62, par. 24, and many authorities there cited. (3) On the record and so far as defendant is concerned plaintiff's injury was in law an accident.

*H. J. Latshaw, Jr.,* and *E. M. Perdue* for respondent.

(1) Under the circumstances of this case it was not incumbent upon respondent to prove the exact reason or cause of the accident. The very fact itself that the elevator door fell, under the circumstances, was of itself sufficient to entitle respondent to go to the jury. Tateman v. Railroad, 70 S. W. 514; Crane v. Railway, 87 Mo. 594; 103 Mo. 328; Breem v. Cooperage Co., 50 Mo. App. 202; Bowen v. Railroad, 95 Mo. 268. (2) Appellant lastly contends that on the record, and so far as appellant is concerned, respondent's injury was in law an accident; but the cases cited in support of this contention do not appear to us to be parallel cases.

BROADDUS, J.—This is an action brought by plaintiff against defendant, a business corporation, to recover damages for personal injuries claimed to have been received by the former on account of the negligence of the latter. The defendant occupies for the transacting of its business, which is that of wholesale dry goods, a large building several stories in height situate in Kansas City, Missouri. The plaintiff on and some time before September 27, 1900, was and had been

in the employ of defendant, and his duties as such employee were in part to remove goods from one story of said building to another, as required, and in performing these duties he and a coemployee were furnished with the exclusive use of a freight elevator which was against the north wall of the building and which had in front and across the entrance to it a safety gate about three feet high, weighing something like twenty-five pounds, which worked automatically with the ascending or descending of the elevator; that is, when the elevator reached any floor of the building in ascending or descending, the gate would rise so that the entrance to the elevator would be open while it stood opposite any floor, and closed when it was above or below. The plan of the gate and its attachments were such that when the elevator approached a floor from above or below, an arm attached to the latter moved a horizontal bar and thereby caused a wood sheave carrying the rope to revolve and take it up, and in that way raise the gate. The rope extended from the circumference of the wood sheave to which it was fastened upwards diagonally to where it passed over two pulleys, the second of which was directly above the center of the gate, and from the latter to the gate itself and vertically along it to its bottom slat when said rope passed through a horizontal hole therein and was there held by a knot tied in the end of it. Accordingly, the height to which the gate would ascend depended upon the length of the rope just referred to. The shorter the rope the higher it would ascend. The height to which it could be made to reach could be regulated by pulling the rope further through the slat and then tying another knot in it further from the end. The elevator gates and appliances connected therewith were all comparatively new, having been in use not over nine months. The rope by which the gate was raised was of the diameter of seven-sixteenths of an inch, the size and kind generally used for such purpose.

It was one of the duties of the plaintiff and his co-employee engaged with him in the performance of the same work to report anything in the elevator or its attachments or appliances which they noticed to be wrong, said report to be made to one Smith, engineer of the building. It was the duty of the latter to daily inspect the elevator gates and other appliances connected therewith and it appears that he had performed this duty the day of the injury and preceding the hour in which it occurred and that he had found everything in good order and working right.

On the day of the injury the plaintiff used the elevator until lunch time noticing nothing unusual in it or the gate or any attachment to either. After plaintiff had returned to his work he had picked up a truck load of goods on the fourth floor and was ready to descend to the packing room in the basement but he found the elevator not at that floor. He testified that in order to move it there he reached over the gate, took hold of the elevator rope and pulled down, and that this started the elevator up and as it reached the floor on which he was standing the gate moved up some distance when he reached under it to catch hold of the rope in order to stop it; and while in that position he was struck on the head by something. As to exactly what struck him he seems not to have been entirely certain. He at first testified that it was the gate, and afterwards that he did not know what it was. No one was present when the injury occurred but he was found lying in an unconscious condition on the elevator floor with the gate down. He was severely hurt.

An examination of the elevator and gate disclosed that the rope which ran from the pulley down to the gate had been broken between the top and bottom of the latter. It was a clean transverse break of it. When the gate was put in the knot was tied in the end of the rope so as to give it the length required for the proper operation of the gate. The expert testimony was that if too

short the effect would be to lift the gate up until it came in contact with the pulley. When it broke there was found to be a second knot in it, which shortened it from four to six inches. There was a dent in the center of the top of the gate just where it would strike the pulley if lifted high enough to come in contact with it. It was testified by the engineer, Smith, that the striking of the pulley by the gate would tend to break the rope and that if the second knot had not been tied in the rope, whereby it was shortened, that the length allowed by the first knot tied at the end would not have subjected it to such tension as would have caused it to break. He further testified that by the inspection made by him in the morning before the injury he discovered that the rope was long enough and in good condition—that there was no indication of any wear or tension, or anything of that kind; that the gate did not then bump against the pulley at all; and that the rope then left about two to five inches between the gate and pulley when the former went up. The plaintiff himself testified that in the morning before the injury the gate worked well, and that he observed nothing wrong with it.

The negligence specified in the petition was that the rope attached to the gate, and which lifted and lowered it, was too short and not of sufficient strength or thickness to properly run and support it; that said rope was made of weak and improper material, and was improperly adjusted, all of which was well known to defendant, or by the exercise of ordinary care could have been known by it.

The defendant complains that the trial court erred in refusing to give its instruction declaring to the jury that upon the pleadings and evidence the plaintiff was not entitled to recover.

The evidence is undisputed that the rope by which the gate to the elevator was moved was comparatively new and of good material—such as was generally used for that purpose, and that it was properly adjusted;

and so the only part of the specification of negligence which we need notice is as to whether or not the rope was too short to properly operate the elevator gate, and if so whether or not it was known to defendant or could have been known to it by the exercise of ordinary care. As said by us in Wendal v. Railway, 75 S. W. 689, while the law enjoins upon the employer the duty to furnish the employee a reasonably safe place and reasonably safe appliances in and with which to perform the work assigned to him, he is not an insurer of the safety of such place or appliances, nor responsible for not providing against all possible and unanticipated happenings. He is only held to exercise ordinary care in furnishing the place or appliances which are reasonably safe so far as the nature of the employment permits, and not to expose the employee to any unknown risks not ordinarily incident to the employment.

In an action of this kind the burden is on the employee to establish negligence on the part of the employer and due care on his part. The presumption is that the employer has discharged his duty in providing for him suitable appliances for the work and in keeping them in that condition. And when this is established the employee is met with the further presumption which, too, must be overcome before he can recover and that is that he assumed all the ordinary and usual hazards of his employment; and to overcome this last presumption he must prove that the injury did not arise from obvious defects in the appliances, or from a hazard incident to the employment. Wood on Master & Servant, section 382, and authorities cited in defendant's brief. It devolves on the employee as a condition precedent to his right to recover that he affirmatively prove the non-fulfillment or non-performance of some duty or obligation owing him by his employer. Gurley v. Railroad, 104 Mo. 223; Yarnell v. Railway, 113 Mo. 570; Dowell v. Guthrie, 116 Mo. 646. In the absence of affirmative proof of negligence the simple fact of an

injury occurring is to be rather attributable presumptively to misadventure, inevitable fate or other cause for which the employer is not liable. Shultz v. Railway, 36 Mo. 32; Nolan v. Shickle, 3 Mo. App. 305.

It must be shown not only that there was a defect in the place or appliance which caused the injury but that it was known, or could have been known to the employer had he exercised ordinary care; and in the absence of proof of either of these essentials there can be no recovery. Hester v. Packing Co., 84 Mo. App. l. c. 454; Breen v. Cooperage Co., 50 Mo. App. 202; Burnes v. Railway, 129 Mo. 41; O'Malley v. Railway, 113 Mo. 329; Sullivan v. Railway, 107 Mo. 66; Covey v. Railway, 86 Mo. 635; Porter v. Railway, 71 Mo. 79. As said in Breen v. Cooperage Co., ante, "it was for plaintiff to trace the cause of the accident to the defendant's negligence and not for the defendant to show the cause of the accident. It is not for defendant to account for the accident on a theory consistent with due care, but for plaintiff to account for it on the theory inconsistent therewith . . . such theory must not rest upon mere conjecture, but either upon direct proof or proof of facts establishing a direct and immediate connection between the defects and accident complained of by logical inference." And similar in effect is Jewett v. Railway, 50 Mo. App. 547; Moore v. Railway, 28 Mo. App. 622; Epperson v. Cable Co., 155 Mo. 346. Negligence can not be assumed from the mere fact of an injury (Yarnell v. Railway, ante) nor that the case is one for a jury from the mere fact that an injury has occurred. Murphy v. Railway, 115 Mo. 119.

As to whether or not the rope attached to the elevator gate was made too short by reason of the tying of a second knot in it, or by whom the knot was tied, or as to how long before the injury, or as to whether or not the gate had been in the habit of striking the pulley, we may refer to the following testimony of the plaintiff himself:

"Q. Do you recollect about a pulley, an iron pulley, that was above the safety gate? A. I do. Q. Do you recollect anything about the gate striking or not striking that iron pulley when it raised up? A. Why, I recollect of the noise the gate would make as it would go up. Q. In striking this pulley? A. Well, I suppose striking the pulley. Q. Do you know whether or not it was in the habit of striking the pulley up there? A. Yes, sir. Q. Did you see it strike? A. No. I could hear it strike. Q. For how long a time before you got hurt had you been in the habit of hearing it strike this pulley? A. Oh, I don't know. Q. Was there ever a time before that that it did not strike it? A. Not that I know of. Q. Now, Mr. Glasscock, do you know how that rope that broke was attached to the gate that hit you? A. Why, it went through a hole in the top of the gate and down through a cross-piece and a knot was tied to hold it there; the hole was in the bottom piece, too, and it went through that hole. Q. And went through that hole? A. Yes, sir. Q. Now, how many knots were there in that rope to your recollection? A. There were two knots. Q. And how long had they been there, to your recollection? A. I could not say; they had been there for quite a while. Q. Do you ever recollect a time when they were not there? A. No, I don't know that I ever did."

It is true the testimony elicited by defendant from other witnesses varied from that of plaintiff, but we can not notice such testimony in considering the defendant's demurrer.

The fact, if it be a fact, that the rope was shortened from four to six inches by the second knot, and that the top of the gate previous to the injury was in the habit of striking against the pulley, coupled with the further fact that a dent was found in the top of the gate after the injury where it would have been had it struck the pulley, justifies the deduction of the inference that the shortening of the rope by the second knot so weak-

ened it that it was unable to stand the continued strain to which it was subjected by being wound up on the sheave at one end and the resistance offered by the pulley to the movement of the gate at the other, and so it broke and let the gate descend. The fact, if it be a fact, that the second knot shortening the rope had been in existence and the gate had been in the habit of striking the pulley, were sufficient to justify the further inference that the defendant knew, or by the exercise of reasonable care could have known of the defective condition of the gate appliances. Knowledge, like actual notice, may be inferred from other facts and circumstances. Rine v. Railway, 100 Mo. 1. c. 235. Whether or not the testimony of the plaintiff was credible was not a question for the court, but for the jury to determine.

If we expunge from the record the testimony of plaintiff and look alone at the evidence of the defendant in relation to the time when the knot in the rope was first discovered, the working of the gate just prior to the injury, and the like, it would be difficult to conclude that it was derelict in any duty which it owed plaintiff; but this evidence like that for plaintiff was for the jury. It is true, as already stated, that no one witnessed the injury received by plaintiff, but the facts and circumstances shown in evidence were, we think, sufficient to justify the submission to the jury of the question as to the cause of the injury.

The plaintiff contends that the legitimate inference from the facts is, that the rope in question broke by reason of its shortness, and that consequently it was not as such a safe appliance. No doubt exists but what the evidence tends to show that the striking of the gate against the pulley did necessarily gradually impair the strength of the rope, and, as a matter of course, in time caused it to break. In such case, however, evidence of such gradual process would appear by more or less unevenness of the two ends of the broken parts. It is in-

credible that the smooth, transverse severance of the rope was the result other than that of some suddenly applied force. That the attending circumstances justify the inference that the cause of the break was the shortness of the rope, is certainly true; but not in the manner claimed by plaintiff, as we have seen. And the inference is equally as strong that the rope must have been shortened but a brief time before it separated, of which there is no evidence that the defendant had any knowledge, or could have had such knowledge, in time, by the exercise of due care, to have remedied the defect so as to have prevented plaintiff's injury.

But accepting as true plaintiff's statement that the rope had been too short for several months, during which time the gate was striking the pulley above, he was guilty of contributory negligence in not calling attention to the defect, for he must have known as a man of ordinary intelligence that under such condition the rope would gradually weaken and finally break. On his own evidence he was guilty of contributory negligence and ought not to recover for his injury. He ought not to be permitted to excuse himself on the flimsy pretext that he was not cognizant of danger. He was required to have exercised his natural senses. Wheat v. St. Louis (Sup. Ct. Mo. not yet reported); Jackson v. Kansas City, decided by us but not yet reported. If the rope was too short and caused the gate to strike the pulley as he says it did, he must have understood at once that it was not working properly and he ought to have adjusted it himself. This he could easily have done as it was a very simple contrivance in that respect. A servant who sees a defect in the appliance furnished him by his master in his employment which he can easily and without skill remedy as well as his master and which he fails to do is guilty of contributory negligence and not entitled to recover. Beckman v. Brewery, 98 Mo. App. 555.

Cause reversed. All concur.