BENJAMIN F. HOLLINGSWORTH, Respondent, v.
NATIONAL BISCUIT COMPANY, Appellant.

Kansas City Court of Appeals, June 26, 1905.

1. MASTER AND SERVANT: Negligence: Assumption of Risk:
Evidence: Plaintiff, a candy cooker of experience, who was
practically his own master in managing a kettle which ex-
ploded and injured him, is held on a review of the evidence
not entitled to recover for the injuries so received.

2. ——: ——: Inspection: Assumption of Risk. A master can
conduct his business in his own way, and the servant knowing
the hazard of his employment as the business is conducted,
impliedly waives the right to compensation for injuries in-
cident thereto, though a different method would have been
less dangerous; and so a candy cooker who knows the kind
of inspection made by the master assumes the risk incident
thereto.

Appeal from Jackson Circuit Court.—*Hon. Shannon C.
Douglass,* Judge.

REVERSED.

*Harkless, Crysler & Histed* for appellant.

(1) The case should not have gone to the jury.
Howard v. Railway, 173 Mo. 524; Glasscock v. Swofford
Bros., 80 S. W., 364, 106 Mo. App. 657; Harrington v.
Wabash, 104 Mo. App. 663. (2) The defendant had
no reason to anticipate any defect in the kettle and none
existed, unless it be that the bubbles which plaintiff him-
self first discovered was evidence of it, and he did not
make this known to defendant. Hence he is guilty of
negligence that prevents recovery. Glasscock v. Swof-
ford Bros., 80 S. W. 364, 106 Mo. App. 657. (3) There
can be no liability for failing to make an inspection
where there is nothing to suggest the necessity therefor,
and in this case no negligence could be predicated up-

on alleged failure to test or inspect. Westinghouse v. Heimlich, 127 Fed. 92.

*Bird & Pope* for respondent.

(1) The plaintiff made a case for the jury. (2) It is only in rare cases, and where great care is used in the face of danger, that courts have ever said that the usual way of doing a thing is evidence of ordinary care, and in most cases it is no evidence at all of the use of ordinary care. Dougherty v. Railway, 128 Mo. 33, 37; Barth v. Railway, 142 Mo. 536, 555; Dean v. Woodenware Works, 80 S. W. 292, 299. — Mo. App. —; Ry. v. McDaniels, 107 U. S. 454; Ry. v. Ives, 144 U. S. 408, 417; Ry. v. Behymer, 189 U. S. 468. (3) The plaintiff was not guilty of contributory negligence.

ELLISON, J.—The plaintiff was engaged in making candy for the defendant by boiling the ingredients in a copper vessel with steam heat. The vessel exploded and threw the hot candy over plaintiff whereby he was severely injured. He brought this action charging that the vessel was old, worn and defective, and was therefore unsafe. He recovered judgment in the trial court.

The vessel (called a kettle) was about thirty-two inches across the top and about twenty inches deep, and it assumed an oval shape at the bottom. It was composed of two sheets of copper, one outside and the other inside, called the lining. These were a short space apart and in the space thus left between the two, steam was passed around and under the ingredients out of which the candy was made. The steam was admitted through a pipe and valve on one side of the vessel and was let out at an exhaust valve on the other side. Thus, the candy was boiled by steam. It was usual to heat the candy in boiling to about 265 degrees. At the time in question plaintiff had boiled the candy about twenty

minutes when it was ready to be taken out and put into what was called the "beater." He found that the beater could not be used at that moment, so he shut off both the admitting and exhaust valves. These remained shut off for about five minutes, which caused the candy to cool down several degrees. Wishing to bring it up to the point it had reached when he shut off the valves, he partly opened the exhaust valve, giving it two or three turns (ten or twelve being necessary to a full opening) and opened the admitting valve by giving it three turns. When he did this the explosion took place which injured him. Plaintiff was a man of fifteen years' experience in the work and had had charge of the kettle for more than a year, determining for himself the manner of making the candy, the heat and time necessary to make it ready for the beater. He had an assistant or helper under him. The kettle had been used for some years, but had been relined about three years previous to the accident. Linings were supposed to last ten or twelve years. There was testimony tending to show that at one or two points where the kettle was riveted bubbles appeared in the candy when it got up to that height in the kettle. Plaintiff had noticed these, but never examined for the cause and paid no attention to it . He did not complain of it nor ask that it be repaired. He generally cooked in a day from ten to twelve "batches" of about thirty-five pounds each, and it was his duty to clean the kettle. He testified that he did not know of defendant ever having the kettle inspected. So far as he knew, the defendant did not inspect the kettle except what might be made by looking at it.

It is apparent that plaintiff is without any legal standing and should not have had judgment in the trial court. He was practically his own master in managing the kettle. He, himself, made out in testimony that he was in sole charge thereof. He was as completely in control of the kettle as the ordinary domestic is of a cooking stove upon which daily meals are prepared. He

testified, and, indeed, that seems to be one cause of his complaint, that defendant had no one to come and inspect the kettle or to look after it during the whole time that he used it. As already stated, he had been engaged in such work for fifteen years and must have known that he was expected to have sole charge of it. The part which was affected by the explosion had not been in use a great length of time—certainly not long enough to show negligence from mere continued use. He testified that there was a defect which had begun to make its appearance by causing bubbles in the candy at certain times, but, as before stated, admits that he did not report it, nor ask that it be repaired. Though he casually spoke of it to a steam fitter in the building.

The only charge of negligence left to the plaintiff after the court's instructions were given, and which is now relied upon, is that the kettle was "old, worn and thin," and that it was known to the defendant, or, if not known, it could have been, had ordinary care in inspecting and repairing the kettle been observed. There is no charge nor pretence of negligence in the original purchase, nor in the new lining which defendant had put in. Evidence in plaintiff's behalf showed that a lining would be expected to last ten or fifteen years, when this had only been in use two or three years.

But it is insisted that there was no proper inspection system adopted by defendant. The mode of inspection was not by any specific test of the strength of the kettle, but was merely that made by observation by defendant's foreman as he passed around the apartment. All this was known to the plaintiff for he explicitly states that there was no other inspection made within his knowledge at any time during his employment. It is a familiar law, that a "master may conduct his business in his own way, and the servants knowing the hazards of his employment as the business is conducted impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a differ-.

ent method of conducting the business would have been less dangerous." [Bradley v. Railway, 138 Mo. 302; Howard v. Railway, 173 Mo. 524; Glasscock v. Swofford, 106 Mo. App. 657; Harrington v. Railway, 104 Mo. App. 663.]

A perusal of the evidence fails to disclose any showing of negligence as regards a complainant, such as plaintiff has shown himself to be. Nothing was concealed from him. No assurances were given to him and no complaints made by him. His long experience and extended knowledge in the use and operation of kettles of this character leave him without any just ground of complaint.

The judgment will be reversed. All concur.