J. W. COTHRON, Respondent, v. THE CUDAHY .PACKING COMPANY, Appellant.

Kansas City Court of Appeals, February 2, 1903.

1. Negligence: RES IPSA LOQUITUR: TWO OR MORE CAUSES OF ACCIDENT. Where an accident may probably be the result of two or more causes, the maxim *res ipsa loquitur* does not apply, as where the falling of certain castings may have been the result of a defective rope or negligent tying of the rope or the striking of some object in their ascent.

2. Master and Servant: NEGLIGENCE: ASSUMPTION OF RISK. A master has a right to conduct his business in his own way, and whatever risk is ordinarily incident to the business thus conducted is assumed by the servant when he engaged in the work, but he does not assume any risk arising out of the master's negligence.

3. ———: ———: ———: COMMON EXPERIENCE. In discussing the facts it is suggested that it is contrary to common experience that an old rope should be stiffer and less pliable than a new one.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED.

*Frank P. Sebree* and *John D. Wendorff* for appellant.

(1) The court committed error in refusing to give instruction No. 1, asked by defendant. There is no evidence whatever even tending to show that said hang-

ers fell on account of any defect or insufficiency of the rope, or on account of any improper method of doing the work. In fact, the evidence is entirely silent as to what caused the hangers to fall. Breen v. Cooperage Co., 50 Mo. App. 202; Brown v. Land and Lumber Co., 65 Mo. App. 163; Plefka v. Knapp, Stout & Co., 145 Mo. 316. (2) The court committed error in refusing to give instruction No. 2, asked by defendant, since there is no evidence in the case even tending to show that said hangers fell by reason of any defect or insufficiency of the rope. (3) There was nothing hidden or concealed about the rope, or hangers in question, and plaintiff was familiar with both said rope and hangers, having used said rope to elevate said hangers continuously for seven or eight days, just prior to said accident and was familiar with the manner in which said rope was being used and said hangers elevated, and knew the danger of the hangers falling on and injuring him, and therefore plaintiff can not recover since it was one of the ordinary risks incident to the employment which plaintiff assumed. Lucy v. Oil Co., 129 Mo. 32; Minnier v. Railroad, 167 Mo. 99; Bradley v. Railroad, 138 Mo. 293; Holloran v. Iron & F. Co., 133 Mo. 470; Nugent v. Milling Co., 131 Mo. 241; Junior v. Electric Light Co., 127 Mo. 79; Berning v. Medart, 56 Mo. App. 443; Harff v. Green, 168 Mo. 308. (4) The court committed error in refusing to give instruction No. 3, asked by defendant. Plaintiff's own testimony clearly shows that he was fully aware of his surroundings in performing the work in which he was engaged and knew of the danger of being struck by the hangers in case they should slip out of said rope. Minnier v. Railroad, 167 Mo. 99; Bradley v. Railroad, 138 Mo. 293; Holloran v. Union & F. Co., 133 Mo. 470; Nugent v. Milling Co., 131 Mo. 241; Junior v. Light Co., 127 Mo. 79; Berning v. Medart, 56 Mo. App. 443. (5) Instruction No. 3 given by the court of its own motion is erroneous in that it ignores the rule of law that plaintiff assumed the ordinary

risks of his employment, and declares that he assumed only such risks as were so obviously dangerous as to threaten immediate injury. It is well-settled law that a servant in his work assumes not only the risks that are so obviously dangerous as to threaten immediate injury. but also the ordinary and usual risks of his employment. This instruction clearly violates this rule of law. Minnier v. Railroad, 167 Mo. 99; Bradley v. Railroad, 138 Mo. 293; Holloran v. Union Iron & F. Co., 133 Mo. 470; Nugent v. Milling Co., 131 Mo. 241; Junior v. Electric Light Co., 127 Mo. 79; Berning v. Medart, 56 Mo. App. 443.

*Kagy & Horn* for respondent.

(1) While there is no evidence directly showing what caused the hangers to slip out, the evidence is that they did slip out when raised to the second story, and the reasonable inference to be drawn from that fact is, that they were not sufficiently tied and could not be safely tied because of the condition of the rope which they were ordered to use. When the bundle had reached a point two stories up, the irons slipped out and fell to the bottom. They were drawn upward through openings in the joists about two feet square, and the reasonable inference is that in raising the bundle it swung like a pendulum and struck against one of the sides of the opening through the floor, which was too small for that purpose, and caused them to slip out and fall upon the plaintiff. There is a class of cases to which the doctrine of *res ipsa loquitur* applies. At the trial of the case in the argument on the demurrer to the evidence, Bro. Sebree urged the point now made, when Judge Gates referred to the case of Blanton v. Dold, 109 Mo. 64; Sackawitz v. Biscuit Co., 78 Mo. App. 144; Harff v. Green, 168 Mo. 308. (2) A demurrer to the evidence admits everything which the testimony conduces to prove, though but in a slight degree. Wilson v. Board

of Education, 63 Mo. 137; Brink v. Railroad, 17 Mo.
App. 177; Fisher v. Railroad, 23 Mo. App. 201; Noeninger v. Vogt, 88 Mo. 589.

BROADDUS, J.—This is a suit to recover damages
for a personal injury. The defendant is a packing
establishment and at the time of the injury was engaged
in constructing a large five-story building, the walls of
which had been put up and the joists placed. The plaintiff was struck on the head and injured by one of a
lot of cast-iron hangers which fell while he and two of
his fellow-servants were elevating them by rope and
tackle from the first floor to a floor above. Prior to the
time of the occurrence plaintiff and another workman
named Dee had been engaged in this work. The hangers in question were of castiron, about eleven inches
long, two and a half inches wide and a half inch thick,
and weighed a little more than six pounds. The method
by which they were elevated was to tie six or eight of
them on one end of a rope passing over a single pulley
attached at one of the upper floors, whereupon said Dee
and the plaintiff, while standing on the first floor, would
take hold of the other end of said rope and pull the hangers to the desired height, at which point other workmen
would disengage the hangers and drop the rope to the
first floor for another bundle of hangers, and so on.
Dee did most of the tying but plaintiff tied some of
them; the bundle which fell being tied by the former.
And while it was not shown just how it was tied in the
rope, it was supposedly in the ordinary manner. By
direction of defendant's foreman, plaintiff and Dee
had made a covering over the place where they had to
stand while engaged in their work, which was intended
as a protection for them from danger of material falling
from above. This covering was made upon the joists
above of boards, was about ten by fifteen feet in dimensions and with an opening about two feet square
through which latter the hangers would pass while be-

ing hoisted. The rope used at the time of the injury was shown by the evidence to have been old, stiff and frazzled at the end, but it had been in use during the preceding seven or eight days. Prior to that time they had been using another and different rope shown to have been in good condition but which, by order of defendant's foreman, was removed and the rope in use at the time of the accident substituted therefor.

The plaintiff in detailing what occurred at the time of the injury, testified that while hauling the rope he heard the irons fall on the covering above, at which time he felt the rope slacken and one of the irons in falling struck him on the head. He also stated that he had suggested to defendant's agent, who was superintending the work, and before they commenced using the old rope, the advisability of using the new rope, whereupon the agent had told him to use the former, saying to him: "If you can't pull that rope there are men outside that will pull it." The plaintiff further stated that he knew it was not a safe place to work; that there was danger of the irons coming out of the rope if not well tied, and that they would fall; and that he continued the work supposing that said agent knew more about the business that he (plaintiff) did, and that it would be safe.

The defense was a general denial, contributory negligence upon the part of plaintiff, and that he assumed the risk. At the close of plaintiff's evidence defendant interposed a demurrer which the court overruled.

Plaintiff relied for recovery upon the failure of defendant to provide him with a reasonably safe place to work and to provide him with reasonably safe tools and appliances. The known facts disclosed by the evidence are, that after the bundle of irons attached to the end of the rope had passed through the aperture in the covering, they for some reason became detached and fell, one of them striking plaintiff on the head and injuring him. It does not appear, because no one saw what occurred, what caused the rope to become untied.

It must, however, have been from one of two causes, viz.: the rope was not sufficiently secured around them, or they struck some object in their ascent which had the effect of disengaging them from the said rope. It is the result of common experience that either cause would ordinarily produce such a result.

There was only one instruction given on the part of the plaintiff, and that was as to the measure of his damages in the event the jury found for him. The theory upon which the case was submitted to the jury is found in instruction number three modified from one asked by the defendant, and which is as follows: "The court instructs the jury that if plaintiff was fully aware of his surroundings in performing the work, and knew of the danger of being struck by hangers in case they should slip out of the rope, and this being the case, he assumed the risk thereof, unless you further find from the evidence that said risk was not so obviously and immediately dangerous that a man of ordinary prudence would not have refused to use said rope or work in said place."

The finding and judgment were for the plaintiff from which defendant appealed.

The plaintiff relies upon the doctrine of *res ipsa loquitur* to sustain his case. See Sackewitz v. Am. Biscuit Co., 78 Mo. App. 144, and Blanton v. Dold, 109 Mo. 64. The theory of *res ipsa loquitur* may be illustrated by a statement from the latter, wherein plaintiff was injured by the sudden starting of a machine contrary to its ordinary mode of operation. The court held: "Such action of the machinery tended of itself to show want of care in its construction or condition." And by way of argument said: "Some catastrophes are of a nature such as carry in a mere statement of their occurrence an implication of neglect. In such event the theory speaks of itself"—*res ipsa loquitur*.

In this case did the character of the rope in question alone account for the slipping of the irons there-

from? We think not. It might have occurred from other causes, as we have stated. With the most perfect rope, insecurely tied, or if so tied, by being brought into forcible contact with some object while being elevated, would most probably cause the irons to slip from their fastenings. We are not therefore to infer that the condition of the rope was the cause of the injury. It probably may have been, but it is as equally, if not more, probable that the result was from one or the other causes named. *Res ipsa loquitur,* or "the thing speaks for itself" does not apply.

If the finding be sustained it must be under the theory of said instruction, that it was the duty of the master to provide a reasonably safe place for his servant, or that if the place was unsafe the risk was not so obviously and immediately dangerous as to deter an ordinarily prudent person from undertaking the same. The plaintiff knew that the place was unsafe and he must have known that there was a risk; in fact, he said he knew there was danger. The defendant had the right to conduct his business in his own way, and whatever risk was ordinarily incident to the business thus conducted was assumed by the plaintiff when he engaged in the work. Any risk not incident to the business, but arising out of defendant's negligence, the plaintiff did not assume. If, therefore, the plaintiff's injury was the result of the ordinary risks of the business, he can not recover; but if they were the result of defendant's negligence, he was entitled to recover.

Common experience teaches that one of the risks of the business would be the danger to be apprehended from a failure to securely tie the irons with the rope; and another would be the risk to be apprehended by the striking of the irons against some object in their ascent, while being elevated, thereby causing them to slip from their fastenings. These risks, then, were such as it might be said the plaintiff assumed because they were incident to the business; and whether they were great

or insignificant, they were assumed by him. If these premises. be correct we can not see what difference it would have made whether a person of ordinary prudence would or would not have engaged in the work, whether it was or was not obviously and immediately dangerous. It is not negligence for a person to select his own method of carrying on his business; he is not bound to adopt the safest and best, and he is liable only when he fails to exercise due care and ordinary care in conducting it. And he must provide as reasonably safe a place as is compatible with his manner of doing the thing.

The place provided by defendant does not seem to have. been unsafe in itself, and plaintiff was not injured for any neglect of duty in that respect. He was injured, evidently, from one of three causes, viz.: the insufficiency of the rope; or, it being insecurely tied around the irons; or, by the irons having been detached from the rope in its ascent by striking against some object, causing the irons to slip from their place and fall. But it does not appear from which. But we think most probably from one or the other of the two last-named causes. We do not appreciate the theory that an old rope, however, perhaps, less substantial than a new one, would not be just as effectual, if not more so, in holding the irons in place as the newer one would have done. And common experience does not teach us that an old rope is stiffer and less pliable than a new one—rather, the contrary is the case.

As we think it has been clearly shown that plaintiff's injury was the result of defendant's failure to provide a suitable rope for the business, if the one in question was not reasonably so—or by one of the two other causes named, the risk of the irons being insecurely tied and their liability of becoming detached by striking some object in their ascent, it not being shown which— the plaintiff was not entitled to recover. It would have been different if the two latter had not been risks which

plaintiff had assumed, for in that event it would have been sufficient to have entitled plaintiff to a verdict for an injury which must have been the result of some one of the defendant's acts of negligence.

From what has been said it is held that the court erred in not sustaining defendant's demurrer to the plaintiff's case, and that said instruction as modified was not the law of the case. Therefore, the cause is reversed. All concur.