## OSCAR N. ROWDEN, Respondent, v. JOHN DANIELL et al., Appellants.

Springfield Court of Appeals, November 10, 1910.

1. **MINES AND MINING: Master and Servant: Falling Boulder: Injury to Servant: Negligence.** While plaintiff was working in a mining shaft, something over one hundred feet deep, a boulder fell from the side of the wall and injured him. This boulder had been tested by plaintiff and his co-laborers several days prior to its falling, and found to be perfectly sound. It was the duty of plaintiff and his co-laborers to make these tests while sinking the shaft, and to take down all loose and drummy boulders. There was no evidence tending to show at what time this boulder became loose and dangerous prior to its falling; nor that any examination of the boulder before the accident would have disclosed that it was loose or likely to fall, or that the master had any reason to anticipate that it would fall. *Held*, that the evidence failed to show negligence, and that the master was not liable.

2. ——: ——: ——: ——: **Failure to Timber: Proximate Cause.** In a suit for injuries to a miner, caused by a boulder falling upon him while he was working in a shaft, it was sought to hold the master liable, because the master refused to permit the servants to prepare timbers for the shaft, but the testimony showed that the real purpose in preparing the timbers was to use them in the drift then being opened in the side opposite the wall from which the boulder fell, and that there was nothing to show that the failure to furnish the timbers had anything to do with the boulder falling.

3. ——: ——: ——: ——: ——: **Duty of Master to Inspect.** The liability of a master for injuries to a servant, caused by a boulder falling from the wall of a mining shaft, only commenced from the time the boulder became loose or from the time when he had reasonable cause to believe that it might become loose and require an inspection, and not then, unless a sufficient length of time had elapsed for the inspection to have been made.

4. **MASTER AND SERVANT: Safe Place to Work: Duty of Master.** It is the duty of the employer to exercise ordinary care to furnish the employee a reasonably safe place in which to do the work required of him, regard being had for the nature and character of the work. But the master is not an insurer and is only liable where he has been guilty of some negligence.

5. ——: ——: Mines and Mining: Falling Boulder: Injury to Servant: Burden of Proof. In a suit by a servant against the master for damages on account of injuries received by the servant from a boulder, which fell from the walls of a mining shaft upon the plaintiff while he was working in said shaft, it is held that the burden was upon the plaintiff, not only to show that the boulder fell and injured him, but that if the master had made a proper inspection he would have discovered that the boulder was loose.

6. ——: ——: Knowledge of Master as to Defect. While it is not necessary in order to hold the master liable, for any injury to a servant resulting from a defect in the appliance with which he had furnished the servant, to prove the master had knowledge of the defect, yet, it is necessary to prove that the master either had such knowledge, or by the exercise of ordinary care could have obtained the same.

7. FOREIGN CORPORATIONS: Failure to Comply With State Law: Personal Liability of Members: Negligence. One of the defendants, acting for himself and other incorporators, all residents of Michigan, purchased mining property in his own name in Missouri, and began mining operations under the name of the Wolverine Zinc Company. Subsequently a corporation was duly organized by the name of Wolverine Zinc Company, and under the laws of the state of Michigan, but this corporation failed to comply with the laws of Missouri relating to foreign corporations. The defendant was one of the managers and personally looked after the mining business in Missouri, and furnished money, both prior and subsequent to the organization of the corporation. *Held*, that he could be held personally liable for the injury to a servant caused by negligence in the operation of the mining property, and could not be released from his personal liability by simply showing the organization of the company in Michigan.

8. ——: ——: No Legal Existence. The Supreme Court in the case of Tri-State Amusement Company v. Amusement Company, 192 Mo. 404, has construed our statute to mean that a foreign corporation has no legal existence in Missouri, as a corporation, until it has complied with the Missouri laws relating to foreign corporations, the intention of which statute was to require foreign corporations to become locally incorporated in like manner and with like obligations and liabilities as are required of domestic corporations, and to prohibit such foreign corporations from transacting business in this State until they had been so locally incorporated.

9. ——: ——: ——: Comity. A foreign corporation can exist and transact business in states other than the one in which it was organized only by comity, and the state may ex-

clude such corporations from doing business within its borders or may impose such terms and conditions precedent to the right to do business, as it may deem for the best interests. of the public.

10. **CORPORATIONS: De Facto Corporation: Failure to Take All Statutory Steps: Personal Liability of Incorporators.** Individuals who attempt to organize a corporation in Missouri, are held personally liable until the charter has been secured and the fees demanded by the state therefor paid into the state treasury.

Appeal from Greene Circuit Court.—*Hon. George Pepperdine,* Special Judge.

REVERSED AND REMANDED.

*Mann, Johnson & Todd, Woodruff & Luster* for appellants.

(1) The Wolverine Zinc Company, though a foreign corporation which had failed to comply with the laws of Missouri relating to foreign corporations, nevertheless could operate and was in fact operating the mine as a corporation at the time plaintiff was injured. R. S. 1899, sec. 1026; Tribble v. Halbert, 127 S. W. 168; Young v. Niles & Scott Co., 122 Mo. App. 401; Insurance Co. v. Railroad, 149 Mo. 165; Lumber Co. v. Sims, 101 Mo. App. 569; Blodgett v. Zinc Co., 120 Fed. 897; Utley v. Hill, 155 Mo. 235; Jones v. Horn, 104 Mo. App. 705; Fritts v. Palmer, 132 U. S. 289; Merreck v. Van Santvoorf, 34 N. Y. 207; Bank v. Hall, 35 Ohio St. 128; 19 Cyc. 1311 and 1314; Bank v. Leeper, 121 Mo. App. 688; Boyington v. Van Etten, 62 Ark. 63, 35 S. W. 622. (2) The evidence failed to show that the master had any notice of the defect in or danger from the boulder. It also failed to show how long the dangerous condition had existed, or that the master should have anticipated the danger. Plaintiff therefore failed to make a case against the

defendants. Carvin v. St. Louis, 151 Mo. 334; Buckley
v. Kansas City, 156 Mo. 16; Alcorn v. Railroad, 108
Mo. 96; Wendall v. Railroad, 100 Mo. App. 556; Ander-
son v. Box Co., 103 Mo. App. 382; Dickey v. Dickey, 111
Mo. App. 304; Cole v. Lead Co., 130 Mo. App. 253;
Harris v. Railroad, 124 S. W. 576.    (3)    There was
no negligent failure on the part of the master to
crib or timber the shaft which resulted in injury to
plaintiff.    Abbott v. Mining Co., 112 Mo. App. 556;
Shore v. Bridge Co., 111 Mo. App. 278; Holt v.
Railroad, 84 Mo. App. 443; Minnier v. Railroad, 167
Mo. 99; Bradley v. Railroad, 138 Mo. 293; Beckham
v. Brewing Assn., 98 Mo. App. 560.    (4)    There was
no negligent failure on the part of the master to in-
spect the boulder and discover and remove the danger
which resulted in the injury to plaintiff.    Nelson v.
Wheel Co., 29 Fed. 840; Halloran v. Pullman Co., 127
S. W. 947; Bowman v. Car & Foundry Co., 125 S. W.
1120; Wendall v. Railroad, 100 Mo. App. 559; Clipper
v. Transit Co., 202 Mo. 432; White on Mines and
Mining, secs. 396-7-8.    (5)    The evidence does not
show that plaintiff was injured through any negligence
on the part of Langston, but even if it did the act
would be that of a fellow-servant.    Whelan v. Mining
Co., 168 U. S. 85; Robinson v. Railroad, 135 Mo. App.
117; Bane v. Irwin, 172 Mo. 306; Schmeizer v. Furni-
ture Co., 134 Mo. App. 493.    (6)    To plaintiff and his
co-laborers was delegated the duty to inspect and trim
the shaft and make it a safe place in which to work,
therefore, the master cannot be held liable if there has
been a failure to perform that duty.    Livengood v.
Zinc Co., 179 Mo. 229; Henson v. Packing Co., 113 Mo.
App. 618; Gibson v. Bridge Co., 112 Mo. App. 594;
Nash v. Kansas City Co., 109 Mo. App. 600; Meehan v.
Railroad, 114 Mo. App. 396; White on Mines and Min-
ing, sec. 451; Miller v. Telephone Co., 126 S. W. 190;
Denker v. Milling Co., 135 Mo. App. 344; Rowden v.
Mining Co., 136 Mo. App. 376; Bennett v. Lime Co..

124 S. W. 611; Kelly v. Railroad, 105 Mo. App. 365;
Bradley v. Tea & Coffee Co., 213 Mo. 320; Fisher v.
Lead Co., 156 Mo. 479.

*J. B. Delaney, Hamlin & Seawell* for respondent.

(1)  Where a number of individuals assume to
act in a corporate capacity in a state where they have
not been clothed with a corporate existence and
authorized, they cannot there be recognized as a
legally constituted corporation though they may have
been duly incorporated in another state; and such
persons in the state where they assume corporate
capacity, will be treated as, and held to the responsi-
bility of partners, both in courts of law and comity.
Bank v. Earle, 39 U. S. (13 Pet. 519), 10 L. Ed. 274;
Hyatt v. Van Riper, 105 Mo. App. 664; Cleaton v.
Emery, 49 Mo. App. 345; Davidson v. Hobson, 59 Mo.
App. 130; Taylor v. Branham, 35 Fla. 297, 39 L. R. A.
362; Hill v. Beach, 12 N. J. Eq. 31; Fuller v. Rowe, 57
N. Y. 23; Wells v. Gates, 18 Barb. 554; Hurt v. Salis-
bury, 55 Mo. 310; Richardson v. Pitts, 71 Mo. 128;
Glenn v. Bergman, 20 Mo. App. 348; Amusement Co.
v. Forest Park, 192 Mo. 404; Lead Co. v. Grote, 80
Mo. App. 271, 127 Mo. 364. (2)  The duty of an
employer to furnish the employee at all times a
reasonably safe place in which to do the work required
of him is not only enjoined by the law governing
employer and employee, but is also imposed upon the
employer as owner of the premises by the general law
for the protection of all persons lawfully thereon.
Musick v. Packing Co., 58 Mo. App. 322; Zellars v.
Light Co., 92 Mo. App. 107; O'Neil v. Young, 58 Mo
App. 628; Hach v. Railroad, 117 Mo. App. 11.
(3)  Ordinary prudence requires a master to adopt
such reasonable methods and apply such reasonable
tests as are likely to discover defects in appliances
used by the servant if they exist; but the master is

Rowden v. Daniell.

not always and under all circumstances excused if he could not see a defect, or, if the conditions are such as would excite suspicion in a man of ordinary prudence, he must go further and apply other tests. Gutridge v. Railroad, 105 Mo. 520; Huth v. Hogye, 76 Mo. App. 671; Deckard v. Railroad, 111 Mo. App. 117; Mariarty v. Schwarzchild, 132 Mo. App. 654; Rogers v. Printing Co., 105 Mo. App. 683; Seals v. Whitney, 130 Mo. App. 412; Dakin v. Chase, 197 Mo. 260; Goransson v. Riter, 186 Mo. 300; Robertson v. Hammond, 115 Mo. App. 520; Bloomfield v. Worster, 118 Mo. App. 254; Lee v. Railroad, 112 Mo. App. 372. (4) The negligence of Langston would not relieve the appellants of liability. Bridges v. Railroad, 6 Mo. App. 389; Bartley v. Trarlicht, 49 Mo. App. 214; Herdler v. Range Co., 136 Mo. 3; Combs v. Rountree, 205 Mo. 367; Lee v. Railroad, 112 Mo. App. 372. (5) No duty devolved upon respondent under his contract to inspect the shaft, and there was no evidence of his contributory negligence or assumption of risk. Rowden v. Mining Co., 136 Mo. App. 376; Anderson v. Mining Co., 138 Mo. App. 78; Weston v. Mining Co., 105 Mo. App. 702; Kielty v. Buehler, 121 Mo. App. 58; Carter v. Baldwin, 107 Mo. App. 217; Lockland v. Mining Co., 110 Mo. App. 638; Smith v. City, 125 Mo. App. 157; Herdler v. Range Co., 136 Mo. 4; Hamman v. Coal Co., 156 Mo. 244; Scott v. Springfield, 81 Mo. App. 312; Yoangue v. Railroad, 133 Mo. App. 141.

GRAY, J.—On the 12th day of February, 1910, this cause was tried in the circuit court of Greene county, before Honorable George Pepperdine, Special Judge, and a jury, resulting in a verdict in favor of the plaintiff, from which the defendants appealed.

The petition stated that, on the 15th day of January, 1906, defendants were engaged in the business of mining in Greene county; that while so engaged, de-

fendants had sunk a shaft to about the depth of one hundred feet, and that on said day said defendants were operating said shaft and digging near the bottom of same in the search for mineral; that the defendants were operating under the name of Wolverine Zinc Company, purporting to be a corporation doing business in the State of Missouri, but that no such corporation was authorized to do business in this state, and that the name so used by defendants was assumed for the purpose of avoiding personal liability, and that in truth and in fact the defendants as individuals were conducting the mining business; that on said day the plaintiff was working in said shaft in the employ of the defendants; that the defendants had sunk said shaft in such a careless and negligent manner "that the walls of the same, consisting of loose earth and boards, were left unguarded and unsupported, and in a condition which rendered them unsafe, dangerous and liable to fall, and that defendants carelessly and negligently allowed the walls of said shaft to remain so unguarded and unsupported, and took no care whatever to provide against and secure plaintiff from the dangerous and unsafe condition of said mine."

The answer was a general denial, and in addition thereto, contained special defenses of assumed risk and contributory negligence.

The Wolverine Zinc Company was a corporation organized under the laws of the state of Michigan, and the persons who organized the same were residents of that state. In fact the record shows an admission that the corporation was legally organized under the laws of the state of Michigan, and there was no evidence upon which to submit the question of fraud in the organization of the corporation.

The plaintiff's testimony shows that he had been working for about six or eight weeks in the shaft wherein he was afterwards injured. The shaft was something over one hundred feet deep and the work

of sinking the shaft was completed, and at the time of the accident, a prospect drift had been started in a westerly direction from the northwest corner of the shaft. In sinking the shaft the first twelve or fourteen feet was dirt and gravel, and from that point for about sixty feet, solid rock was encountered. From the bottom of the lime rock formation, and for a distance of about eighteen feet, the shaft was sunk through soft grained rock. The testimony shows that it was the custom in proper mining to put in "cribbing" in the shaft wherein the walls are dirt or soft grained rock that is likely to crumble. "Cribbing" is a pen made by putting timbers around the walls of the shaft, and when properly placed holds the walls of the shaft in place. The last ten or twelve feet of the shaft were sunk through a boulder formation composed of boulders and clay. When the shaft was sunk, it was supposed that ore would be found at the bottom of the soft grained rock above mentioned, but instead thereof, the boulder formation was encountered with but little ore. It therefore became the intention of the parties to sink the shaft through the boulder formation, and then drift, in an effort to locate the deposit of ore. The east side of the shaft was not in the boulder formation, but seemed to be a solid rock which indicated to the miners that the ore deposit would be found in the opposite direction.

After the shaft was finished and drifting had been commenced, but before the drift had been opened any distance from the shaft, a boulder fell from the northeast corner of the shaft and injured the plaintiff. The testimony further shows that the plaintiff and the men working with him, in so far as the character of the work performed was concerned, were fellow-servants, and that no special part of the work was left to be performed by any one of the men, but they worked along together in the common work of sinking the shaft and opening the drift. It was the duty and the custom of

the men to use powder for the purpose of loosening the dirt and rock from its natural position, so that it could be shoveled into tubs and hoisted to the surface, and after the shots were fired, to examine the walls of the shaft with their picks and hammers, for the purpose of removing all material that was loose or liable to fall.

About ten or twelve feet from the bottom, a boulder was left in the northeast corner of the shaft, and according to the plaintiff's testimony, in the north wall, and defendants' testimony, in the east wall. This boulder extended a few inches into the shaft and was examined by the men, including the plaintiff, and they were of the opinion that it was solid, and there was no danger of it becoming loose and falling to the bottom of the shaft. In sinking, the men were able to excavate about one and one-half feet to two feet per day, and they all testified that from the time they first unearthed this boulder until they got so far below it they could not reach it, they sounded it from time to time for the purpose of ascertaining whether it was solid or likely to become loose. The testimony also shows that the miners determine whether a boulder is solid or loose by the sound made by striking it with a hammer or pick. If the boulder is loose and it is struck with a hammer, the sound is like that of a drum or a dead sound. The boulder gave no evidence that it was not solid in the wall, and it was not the duty of the men to remove it unless they were of the opinion that it was loose.

The plaintiff undertook to show that the defendants were guilty of negligence in not sending down timbers to timber the sides of the shaft, so as to hold the dirt in the walls thereof in proper place. We have carefully read the evidence, and from it this charge of the plaintiff is not sustained. It is true one of the men asked one of the defendants to prepare some timbers, and that the same were not prepared previous

to the accident. But the testimony shows the real purpose in preparing the timbers was to use them in the drift then being opened from the northwest corner of the shaft. In driving drifts in the character of ground encountered by defendants, the testimony shows it was customary and proper to put in timbers for the purpose of holding the roof of the drift, but all the evidence shows that the drift had not been opened a sufficient distance to require the timbers, and that the request of one of the men to furnish timbers was only intended that they should be secured and ready to put in the shaft when the drift had been sufficiently opened therefor. There is not a word of testimony that the failure to furnish the timbers or to send them into the ground, had anything to do with the boulder falling from the northeast corner of the shaft. And if the defendants are liable in this case, it must be upon the ground that they were careless and negligent in permitting the boulder to remain where it did in the shaft after it became loose.

The plaintiff did not sue the corporation, but brought his action against the defendant, Langsford, who was the superintendent of the defendant company, but was not an officer or stockholder therein, and also against the defendant, Daniell, who was an officer and director of the corporation.

It is the duty of the employer to exercise ordinary care to furnish the employee a reasonably safe place in which to do the work required of him, regard being had for the nature and character of the work. And the law is well settled that where there is substantial evidence of neglect of this duty, the liability of the master, for an injury to the servant is a question for the jury. But the master is not an insurer, and is only liable in the character of the case now under discussion where he has been guilty of some negligence. [McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S. W.

872; Cothron v. Packing Co., 98 Mo. App. 343, 73 S. W. 279.]

The charge in the petition in this case is, "that the walls of the shafts consisting of loose earth and boards, were left unguarded and unsupported and in a condition which rendered them unsafe, dangerous and liable to fall." There is no testimony supporting the allegation. The only evidence of anything loose in the walls of the shaft comes from the fact that the boulder in question fell and injured the plaintiff. When this boulder was unearthed, the testimony is uncontradicted that it was tested by the skilled miners, including the plaintiff, and it was their unanimous opinion that it was solid, and for that reason it was permitted to remain in the wall of the shaft. Afterwards and from time to time during the days they were sinking the shaft by this boulder and in reach of it, further examinations were made and each successive examination only further convinced the employees that the boulder was solid and would not fall. There is no testimony in the case that any examination of the boulder before the accident would have discovered that it was loose or likely to fall.

The burden was upon the plaintiff not only to show that the boulder fell and injured him, but that if the master had made a proper inspection, it would have been shown that the boulder was loose. The jury was asked to take notice, without proof, that the boulder was loose for sometime before it fell, and that a proper examination would have shown that fact. The boulder was eighteen or twenty inches in diameter, and of an oval shape, and using common knowledge, it is likely that a boulder of that weight did not hang in the wall of the shaft but a short time after it became loose. The evidence shows it was for the men engaged in sinking the shaft to determine for themselves when they found a boulder whether it should be taken out or left, and as above stated, after a proper examination,

they concluded that the boulder was solid and that it would not be necessary to take it out.

In the case of Fisher v. Central Lead Co., 156 Mo. 479, 56 S. W. 1107, the plaintiff was a miner working in a drift under the surface, and was killed by a slab falling from the roof upon him. The petition charged that the accident was caused by the fact that defendant failed to have the roof of the mine carefully and properly inspected by a competent miner or inspector. The evidence showed that but a short time previous to the accident, an inspection had been made, and it was claimed by the plaintiff that the same was not carefully made. In passing upon the question the court said: "That the roof was in a dangerous condition at the point where the rock fell, at the time it fell, is also beyond question, and that there was evidence from which the jury might have reasonably inferred that it was in a like dangerous condition at the time the inspection was made, and that such condition would have been disclosed by a careful and proper inspection at that time, which was a few minutes before the rock fell; and in time to have prevented the injury, must also be conceded." It was from the fact that the testimony showed that the slab was loose before the accident, and that a proper inspection would have shown that fact, that the case was submitted to the jury. In the present case no direct testimony of such fact was offered, and neither was there testimony offered from which such an inference could be drawn.

The master is not liable for failure to inspect, unless the testimony tends to show that if a proper inspection had been made, the defect which afterwards caused the injury, would have been discovered. And while it is not necessary, in order to hold the master liable for an injury to the servant resulting from a defect in the appliance with which he had furnished the servant, to prove the master had knowledge of the defect, yet it is necessary to prove that the master either

had such knowledge, or by the exercise of reasonable care could have had the same.

The liability of the defendants only commenced from the time the boulder became loose, or from the time when they had reasonable cause to believe that it might become loose and required an inspection, and not then until a sufficient length of time had elapsed for the inspection to have been made. And in order for the plaintiff to recover, it is necessary for him to prove the allegation of his petition: "That the defendants permitted the loose dirt to remain in the walls of the shaft, so that the same was likely to fall and injure the plaintiff." Upon this important issue in the case, the plaintiff offered no testimony.

In the case of Glasscock v. Dry Goods Co., 106 Mo. App. 657, 80 S. W. 364, the plaintiff was injured by reason of a rope breaking and letting a door fall upon him. The testimony did not show how long the rope had been in a defective condition, if at all, and the court said: "The inference is equally as strong that the rope must have been shortened but a brief time before it separated, of which there is no evidence that the defendant had any knowledge, or could have had such knowledge, in time, by the exercise of due care, to have remedied the defect so as to have prevented plaintiff's injury." And in applying the law to the case, the court used the following language: "It must be shown not only that there was a defect in the place or appliance which caused the injury, but that it was known, or could have been known to the employer had he exercised ordinary care; and in the absence of proof of either of these essentials, there could be no recovery." To the same effect are Breen v. St. Louis Cooperage Co., 50 Mo. App. 202, and Hester v. Dold Packing Co., 84 Mo. App. 451.

As the case is to be retried, there is another question in the record that must be disposed of. It is the contention of the defendants that the action cannot be

maintained against Daniell. The plaintiff was working for the Wolverine Zinc Company, but that corporation had not complied with the laws of the State of Missouri, and had no right to engage in business in this state.

The plaintiff contends that inasmuch as the corporation had not complied with the laws of the State of Missouri, all of its officers and stockholders are liable as partners to plaintiff. It will not be necessary to pass upon the question of the liability of ordinary stockholders of foreign corporations which have not complied with the laws of this state.

The evidence shows that the Wolverine Zinc Company was incorporated in July, 1904, but previous to that time the defendant, Daniell, with the other incorporators, was engaged in mining in Greene county, Missouri, under the name of the Wolverine Zinc Company. While so engaged, the corporation was organized. Both prior and after the organization of the corporation, Daniell was personally looking after the affairs of the business. The lease to the property on which the company was mining, was in his name.

Our statutes plainly provide that before any foreign corporation shall be authorized or permitted to transact business in this state, it shall file a copy of its charter with our Secretary of State, and shall pay into the state treasury upon the proportion of its capital stock represented by property and business in this state, equal to the sums required of similar corporations organized under the laws of this state.

Our Supreme Court in the case of Tri-State Amusement Co v. Amusement Co., 192 Mo. 404, 90 S. W. 1020, has construed our statute to mean that the corporation has no legal existence in Missouri as a corporation until it has complied with the law. In other words, our court decided that the lawmakers intended to make foreign corporations become locally incorporated in like manner and with like obligations and lia-

bilities as are required of domestic corporations, and to prohibit such foreign corporations from transacting business in this state until they have been so locally incorporated. And our court further held in that case that the contracts of foreign corporations that have not complied with the laws of this state, are void.

In Hurt v. Salisbury, 55 Mo. 310, and Richardson v. Pitts, 71 Mo. 128, our court held that until the domestic corporation has complied with the law and procured its charter under the laws of this state, its officers who organized the corporation are liable as individuals. If this is true and it was the intention of the lawmakers, as declared by the Supreme Court in the Amusement case to make foreign corporations become locally incorporated before they will be permitted to transact business in this state, it seems to us that the defendant, Daniell, should be held personally liable under the facts in this case. He was one of the parties carrying on the business in the name of the Wolverine Zinc Company, previous to the organization of the corporation, and still continued one of the active managers of the business. It seems to us that under the authority of Hurt v. Salisbury and Richardson v. Pitts, supra, his individual liability continued until a corporation was organized that was permitted to take the business of the individuals. The undisputed evidence shows that no such corporation existed in the State of Missouri, and therefore, Daniell was not released from his individual liability. In holding the defendant, Daniell, liable in this case, we are only giving full force to our statute. The foreign corporation can exist and transact business in states other than the one in which it was organized only by comity, and the state may exclude such corporations from doing business within its borders, or may impose such terms and conditions precedent to the right to do business as it may deem for the best interests of the public. [Toomey v. Supreme Lodge K. of P., 74 Mo. App. 507; National

Lead Co. v. Grote Paint Store Co., 80 Mo. App. 247.]

Our state has prescribed the conditions and the compliance with them is the price demanded for the right of a foreign corporation to do business in Missouri. Our laws hold individuals who attempt to organize a corporation, personally liable until the charter has been secured and the fees demanded by the state therefor paid into the state treasury. The home corporations are required to pay for the benefit of the state government certain sums in order to be legally created a corporation, and not until these things have been done are the organizers relieved of their individual liability.

When the plaintiff showed that Daniell was engaged with others as the Wolverine Zinc Company in mining in Greene county, previous to the organization of the corporation by that name in Michigan, and that mining was carried on in said name until the plaintiff was injured, and during said time Daniell was furnishing money and was one of the managers of the business, he could not be released of his personal liability to plaintiff by simply showing the organization of the corporation in Michigan, when it further appeared that the corporation wholly failed to comply with the laws of this state and had no right to make any contract or transact any business in this state.

We are asked to reverse the judgment without remanding the case. The evidence preserved in the record is not sufficient to take the case to the jury, but it may be on another trial additional evidence may be procured sufficient for that purpose.

We will therefore reverse the judgment and remand the cause. All concur.