Robinson, J.
 

 The sole question here is: Is the president, manager, and director of a foreign cor
 
 *151
 
 poration, doing business in this state, without compliance with the laws thereof pertaining to the right of foreign corporations to transact business in this state, liable individually in this state for the debts of the corporation contracted and incurred by him as its agent?
 

 A corporation is an entity, having an existence only in contemplation of, and by force of, law, being wholly artificial and dependent for its existence upon the power conferred by a sovereign. It necessarily follows that its power cannot exceed that of the sovereign that gave it. The power of the sovereign being limited to a given territory, the extent of the power it is able to confer must be likewise limited. However, in the absence of legislation to the contrary, it is the general rule that by comity between states a corporate franchise issued by one sovereign state is recognized extraterritorially. That such was the policy of Ohio prior to the present legislation upon the subject appears by the declaration of this court in the case of
 
 Newburg Petroleum Co.
 
 v.
 
 Weare,
 
 27 Ohio St., 343, wherein it was held:
 

 “It is not contrary to the laws of Ohio, nor against public policy, in the present condition of her laws, for a foreign corporation, lawfully organized in a sister state, to do business in Ohio.”
 

 It having been lawful, by the comity of states, prior to the present legislation upon that subject, for foreign corporations to transact business in the state of Ohio, the status of a foreign corporation doing business in Ohio must now be determined by ascertaining to what extent legislation has modified that policy.
 

 
 *152
 
 Section 178, General Code, specifically provides that, before a foreign corporation transacts business in Ohio, it must comply with certain requirements therein provided, and succeeding sections provide for punishment of persons transacting business for a foreign corporation and for punishment of the corporation, and, were there no other provisions than above mentioned, it would be clear that it is no longer the policy of Ohio to in any way recognize the corporate existence of a foreign corporation, or any of its acts, prior to its compliance with the requirements of those sections. But, to determine the present policy of Ohio, it is necessary to examine the other provisions of those and other sections. In addition to the provision prohibiting the transaction of business in this state by a foreign corporation without complying with certain requirements, Section 178 contains this provision :
 

 “No such foreign corporation doing business in this state without such certificate shall maintain an action in this state upon a contract made by it in this state until it has procured such certificate.”
 

 The significant thing in this paragraph, in so far as it indicates a policy, being the use of the word “until” instead of “before,” thus withholding the right of recourse to the courts until compliance, rather than permanently denying it for all business done before compliance, and evincing a purpose to secure compliance with the statutory provisions rather than a purpose to prevent such corporation from coming into and doing business in this state.
 

 That it is not the policy of this state to treat foreign corporations doing business in this state
 
 *153
 
 without compliance with our statutes as nonexistent or legally incompetent is clearly indicated by Section 5508, General Code, where it is specifically provided that its contracts made in this state without compliance “shall be enforceable against it,” but not by it.
 

 A foreign corporation, doing business in Ohio without compliance with the Ohio statutes, having been made liable by Section 5508, General Code, upon its contracts so made, it is clear that it is not the purpose of the existing legislation to withdraw or withhold the comity permitting foreign corporations to do business in this state, but only to impose such penalties as will the more nearly insure compliance with the Ohio requirements.
 

 The Legislature having clearly indicated its policy in that respect, this court cannot do otherwise than follow that policy.
 

 Plaintiff in error relies very largely upon the cases of
 
 Ryerson & Son
 
 v.
 
 Shaw,
 
 277 Ill., 524, 115 N. E., 650, and
 
 Critchfield & Co.
 
 v.
 
 Armour,
 
 228 Ill. App., 28, and to a lesser degree upon the cases of
 
 Raff
 
 v.
 
 Isman,
 
 235 Pa., 347, 84 A., 352;
 
 Rowden
 
 v.
 
 Daniel,
 
 151 Mo. App., 15, 132 S. W., 23;
 
 Cunnyngham
 
 v.
 
 Shelby,
 
 136 Tenn., 176, 188 S. W., 1147, L. R. A., 1917B, 572;
 
 Lasher
 
 v.
 
 Stimson,
 
 145 Pa., 30, 23 A., 552, and
 
 Taylor
 
 v.
 
 Branham,
 
 35 Fla., 297, 17 So., 552, 39 L. R. A., 362, 48 Am. St. Rep., 249. Those cases are based upon the doctrine that a person who assumes to act as an agent for a nonexistent or legally incompetent principal renders himself personally liable to the persons with whom he deals, and upon the conclusion that in the respective jurisdictions of those courts a foreign
 
 *154
 
 corporation has neither • qualification nor existence prior to compliance with their respective state statutes.
 

 Our conclusion is that as foreign corporations doing business in Ohio have always been recognized as having, by the comity of states, both qualification and existence in Ohio, and as the imposition of penalties upon and the withdrawal of rights of such corporations for noncompliance with our statute are not for the purpose of withdrawing that comity, but for the purpose of more effectually securing such compliance, the doctrine of nonexistence and incompetence has no application in Ohio to foreign corporations.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.